**08 CV 3516**

JUDGE KRAM

Jeffrey S. Abraham
Philip T. Taylor
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Attorneys for Plaintiff**



APR 11 2008
U.S.D.C. S.D.N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GLOBAL CASH ACCESS HOLDINGS, INC., )<br>KIRK SANFORD, KARIM MASKATIYA, )<br>ROBERT CUCINOTTA, M&C )<br>INTERNATIONAL, SUMMIT PARTNERS, L.P., )<br>GOLDMAN SACHS & CO., INC., and J.P. )<br>MORGAN SECURITIES, INC., )<br>)<br>Defendants. )<br>) | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and his counsel, based upon the investigation by Plaintiff's counsel including an analysis of publicly available news articles, reports, public filings made with the Securities and Exchange Commission ("SEC"), securities analysts' reports and advisories about Global Cash Access Holdings, Inc. ("GCA" or the "Company").

## NATURE OF THE ACTION

1. This is a class action arising out of materially misleading statements in connection with the initial public offering ("IPO" or the "Offering") of GCA which took place pursuant to a prospectus (the "Prospectus") filed as part of a Form S-1/A registration statement (the "Registration Statement") with the SEC on September 22, 2005, the closing of which took place in New York, New York on September 28, 2005. The IPO raised almost $225 million in capital from members of the investing public.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), respectively 15 U.S.C. §§77k, 77l(a)(2) and 77o.

3. This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1331.

4. Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District – including the closing of the IPO and several Defendants, including the Underwriter Defendants (defined below), have their primary place of business in this District.

5. In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the New York Stock Exchange

## PARTIES

6. Plaintiff Robert Lowinger purchased shares of GCA common stock ("Common Stock"), as set forth in the certification attached hereto and incorporated herein by reference, pursuant to and traceable to the Company's IPO, and was damaged thereby.

7. Defendant GCA, through its subsidiaries, provides cash access products and related services to the gaming industry in the United States and internationally. The solutions include cash access products and services, information services, cashless gaming products, and credit card servicing. The Company is headquartered in Las Vegas, Nevada.

8. Defendant Kirk Sanford ("Sanford") at the time of the IPO was the President, Chief Executive Officer and a Director of GCA. Sanford either personally or through an attorney-in-fact signed the Registration Statement. On October 31, 2007, Sanford resigned his positions at GCA.

9. Defendant Karim Maskatiya ("Maskatiya") was a co-founder of GCA and, at the time of the IPO, was Co-Chairman of the Board of Directors, and in that capacity, either personally or through an attorney-in-fact signed the Registration Statement. Maskatiya beneficially owned 50% of Defendant M&C International ("M&C"). M&C offered and sold 2,774,870 shares of GCA Common Stock in the IPO. Maskatiya maintains his principal place of business at M&C's offices located at 643 River Oaks Parkway, San Jose, California 95134.

10. Defendant Robert Cucinotta ("Cucinotta") was a co-founder of GCA and, at the time of the IPO, was a Director of GCA and, in that capacity, either personally or through an attorney-in-fact signed the Registration Statement. Cucinotta beneficially owned 50% of M&C and sold 2,774,870 shares of GCA Common Stock in the IPO. Cucinotta maintains his principal

place of business at M&C offices located at 643 River Oaks Parkway, San Jose, California, 95134.

11.     Defendant M&C International is a holding company located in San Jose, California, 50% of which is beneficially owned by Defendant Maskatiya and 50% of which is owned by Defendant Cucinotta. Prior to the time of the IPO, M&C beneficially owned 27,748,698 shares of GCA Common Stock constituting 38.69% of GCA's outstanding Common Stock of which it offered and sold 2,774,870 shares in the IPO for total net proceeds of more than $36 million.

12.     Defendant Summit Partners, L.P. ("Summit Partners") is an investment fund located at 499 Hamilton Avenue, Suite 200, Palo Alto, California 94301. Summit Partners prior to the IPO beneficially owned 25,040,808 shares of GCA Common Stock constituting 34.91% of GCA's outstanding common stock of which it offered and sold 2,504,081 shares in the IPO for total net proceeds of more than $32.5 million.

13.     Defendant Goldman Sach & Co., Inc. ("Goldman Sachs") is an investment banking firm which maintains its principal executive offices at 85 Broad Street, New York, New York 10004. Goldman Sachs acted as a co-lead underwriter with respect to the IPO and was directly responsible for the distribution and sale of at least 4,016,040 of the shares sold in the IPO with respect to which the $0.98 per share underwriting discount resulted in total fees of $3,937,719.20.

14.     Defendant J.P. Morgan Securities, Inc. ("JP Morgan") is an investment banking firm which maintains its principal executive offices at 270 Park Avenue, New York, New York 10017. JP Morgan acted as a co-lead underwriter with respect to the IPO and was directly

responsible for the distribution and sale of at least 4,016,040 of the shares sold in the IPO with respect to which the $0.98 per share underwriting discount resulted in total fees of $3,937,719.20. In addition, JP Morgan Chase Bank, a corporate affiliate of Defendant JP Morgan, acted as trustee for First Plaza Group Trust, which offered 205,990 shares of GCA Common Stock for sale in the IPO.

15.     Defendants Sanford, Maskatiya and Cucinotta are collectively referred to herein as the "Individual Defendants" and Defendants Goldman Sachs and JP Morgan are collectively referred to herein as the "Underwriter Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and all persons other than Defendants who purchased the Common Stock of GCA pursuant or traceable to the IPO and continued to hold such stocks on November 14, 2007 (the "Class"). Excluded from the Class are Defendants herein, and any person, firm, trust, corporation, or other entity in which the Defendants have a controlling interest or which is related to or affiliated with the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

17.     The members of the Class are so numerous that joinder of all members is impracticable. GCA sold 16,064,157 shares of Common Stock and an additional 2,409,624 shares covered by an over allotment option were granted to the underwriters in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the hundreds, if not, thousands. In addition, the names and addresses of the Class members can be

ascertained from the books and records of GCA or its transfer agent or the IPO's underwriters. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

18. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

19. Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

20. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

21. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the Prospectus and Registration Statement either contained an untrue statement of a material fact or omitted to state a material fact necessary to make the statements therein not misleading;

(b) Whether the Individual Defendants and the Underwriter Defendants conducted a reasonable investigation giving them reasonable grounds to believe that at the time the Registration Statement became effective, that the statements contained therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading;

(c) Whether Defendants Maskatiya, Cucinotta, M&C and Summit Partners were control persons of GCA at the time of the IPO; and

(d) The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

22. Defendant GCA, through its subsidiaries, provides cash access products and related services to the gaming industry in the United States and internationally. Its products include cash access products and services, information services, cashless gaming products, and credit card servicing.

23. On or about September 22, 2005, GCA filed with the SEC the Registration Statement, which included the Prospectus, with respect to the IPO.

24. In the IPO, 16,064,157 shares of GCA Common Stock priced at $14.00 per share were offered and sold to Plaintiff and other members of the investing public raising a total of more than $256 million. Of those shares, 9,000,000 were sold and offered by the Company and

7,064,157 were sold offered by selling stockholders including Defendants M&C and Summit Partners.

25. The Prospectus described GCA as "the leading provider of cash access products and related services to the gaming industry . . . ." This was accomplished through ATM (automatic teller machine) cash withdrawals, credit card cash advances and POS (point of sale) debit card transactions.

26. GCA's revenues came from the service fees it charges gamblers (or other customers) seeking a cash advance. The largest costs are the interchange fees it pays, usually to Visa and MasterCard, and the commission GCA pays the gaming establishment at which its services are offered.

27. The Prospectus described GCA's principal costs as follows:

*Cost of Revenues.*

Cost of revenues are costs and expenses directly related to the generation of revenue. For cash advance, ATM and, to a lesser extent, check services, we pay a commission to the gaming establishment at which the transaction occurs. Commissions are the largest component of cost of revenues. We expect commissions to increase as a percentage of revenue as new contracts are signed or existing contracts are renewed. . . .

28. Similarly, the Prospectus commented on the Company's results of operations by stating that:

*Cost of Revenues.*

Cost of revenues increased 14.1% from $130.4 million to $148.7 million. The largest component of cost of revenues is commissions, and commissions increased 10.0% in the 2005 period as contracts were signed or renewed at higher commission rates than experienced in the 2004 period, due to competitive pressures. The second-largest component of cost of revenues is interchange; interchange expenses increased 23.6%. Warranty expenses increased 26.7%. We expect that commissions, due to competitive pressures, and interchange will

continue to increase, and we expect that in the balance of 2005 cost of revenues will increase at a rate faster than revenues.

Primarily as a result of the factors described above, gross profit increased 13.5%, from $64.7 million to $73.4 million. We expect that, even though cost of revenues will grow more rapidly than revenues, gross profit for the final two quarters of 2005 will be higher than in the comparable 2004 period.

29.  The entire Prospectus and the statements quoted above were materially false or misleading because they failed to disclose that: (a) the Company's internal controls were deficient causing its finance and accounting departments to be unable to accurately calculate the amount of commissions payable to the Company's customers; (b) GCA had improperly computed the amount of commissions it was required to pay many of its customers resulting in the Company failing to comply with contractual terms; and (c) GCA's expenses (*i.e.* cost of revenues) during 2005 were understated resulting in an overstatement of gross profit margins and net income.

30.  On October 31, 2007, the Company issued a press release announcing that Defendant Sanford had resigned from both his executive positions at the Company as well as his position on GCA's board of directors. Scott Betts was appointed President and CEO of the Company in place of Defendant Sanford.

31.  On November 14, 2007, GCA issued a press release announcing that it would be delaying the filing of its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2007 pending the conclusion of an internal investigation being conducted under the direction of the Audit Committee of the Board of Directors, with the assistance of independent counsel, into allegations, the precise nature of which were not disclosed, made by an individual whose identity was purportedly not disclosed to the Company.

32.   In reaction to this announcement, GCA's Common Stock plummeted in price from its previous price of $9.20 to close at $3.71 per share on very high volume.

33.   On December 7, 2007, Scott Betts, the newly installed and current President and CEO of GCA spoke on a conference call with respect to the previously reported internal investigation stating that: there existed an ongoing issue with a lack of internal controls over payment systems and the Audit Committee investigated that issue; the Audit Committee investigation uncovered problems with respect to the computation of commission payments to twenty customers and the reporting of transactions to another 100 customers. Mr. Betts, however, declined to review many of the details of the allegations made, which prompted the Audit Committee investigation.

34.   Also, on December 7, 2007, Deutsche Bank issued a research report regarding GCA stating in relevant part that:

> **What we still do not know.** Though GCA's $10mm all-in est. suggests that its financial exposure is likely to be ltd, there are too many unknowns associated w/ the ongoing investigation to put us completely at ease. At this point, it is unclear how many of GCA's top clients may have been affected or if this type of event could trigger an exit clause in those customers' contracts. Though GCA did not change its 2007 outlook, the fact that guidance is likely based on the same flawed methods for calc. commissions and reporting transactions questions the reliability of this outlook, in our view. We do not yet know whether the issues uncovered will warrant a financial restatement. We also note there are other pieces of the investigation that remain confidential. Add to this the series of missteps by the co. prior to the internal investigation, and we remain on the sidelines for now. Maintain Hold. (Emphasis in original)

35.   On January 30, 2008, the Company filed a Form 10-Q for the period ended September 30, 2007. The Form 10-Q reported that the Company would record $2.6 million in additional commission costs; $1.9 million of that amount related to transactions completed in

2005 and 2006.

## COUNT I

### Violation of Section 11 of the Securities Act

36. Plaintiff repeats and realleges each and every allegation contained above.

37. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class against Defendants GCA, Sanford, Maskatiya, Cucinotta, Goldman Sachs and JP Morgan.

38. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

39. GCA is the registrant for the IPO. The Defendant named herein is responsible for the contents and dissemination of the Registration Statement and the Prospectus.

40. As issuer of the shares, GCA is strictly liable to Plaintiff and the Class for the misstatements and omissions.

41. Defendants Sanford, Maskatiya and Cucinotta were directors of GCA within the meaning of Section 11(a)(3) of the Securities Act at the time of the IPO and either personally or through an attorney-in-fact signed the Registration Statement.

42. Defendants Goldman Sachs and JP Morgan were underwriters for the IPO within the meaning of Section 11(a)(5) of the Securities Act.

43. Defendants did not make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

44. By reasons of the conduct herein alleged, Defendants violated Section 11 of the Securities Act.

45. Plaintiff acquired GCA shares pursuant to the Registration Statement.

46. Plaintiff and the Class have sustained damages. The value of GCA declined substantially subsequent to and due to Defendant's violations.

47. At the times they purchased shares of GCA Common Stock, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to November 14, 2007. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

### Pursuant to Section 12(a)(2) of the Securities Act

48. Plaintiff repeats and realleges each and every allegation above.

49. This Count is brought for violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), against the Underwriter Defendants, each of whom offered and sold GCA Common Stock or solicited the sale of such stock to the Class in the IPO by means of the Registration Statement and Prospectus.

50. The Registration Statement and Prospectus included untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in light of the circumstances in which they were made, not misleading.

51. Plaintiff and the members of the Class did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement and Prospectus.

52. The Underwriter Defendants named herein were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement and Prospectus to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein not misleading. The Underwriter Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statements and Prospectus were accurate and complete in all material respects.

53. This claim has been brought within one year after the discovery of the untrue statements and omissions in the Registration Statement and Prospectus and within three years after GCA Common Stock was sold to the Class in connection with the IPO.

54. By reason of the misconduct alleged herein, the Defendants named in this Count violated Section 12(a)(2) of the Securities Act and are liable to Plaintiff and the members of the Class who purchased or acquired GCA Common Stock in the IPO, each of whom has been damaged as a result of such violations.

55. Plaintiff and the members of the Class who purchased GCA Common Stock in the IPO hereby seek rescission of their purchases and hereby tender to the Defendants named in this Count the Common Stock, which Plaintiff and other members of the Class continue to own, in return for the consideration paid for those securities, together with interest thereon.

## COUNT III

### Pursuant to Section 15 of the Securities Act

56. Plaintiff repeats and realleges each and every allegation contained above.

57. This claim is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, against Defendants Maskatiya, Cucinotta, M&C and Summit Partners.

58. GCA is a primary violator of Section 11 of the Securities Act.

59. Defendant M&C was a control person of GCA by virtue of its beneficial ownership of a large percentage of the Company's stock, having its two owners on GCA's board of directors and its relationship and arrangements with other directors and Summit Partners.

60. Defendants Maskatiya and Cucinotta were control persons of GCA by virtue of their beneficial ownership of M&C, which was a control person of GCA as described above, and their positions as directors of GCA.

61. Defendant Summit Partners was a control person of GCA by virtue of its beneficial ownership of a large percentage of the Company's stock, having its representatives on GCA's board of directors, and its relationship and arrangements with other directors and M&C.

62. As control persons of GCA, Defendants Maskatiya, Cucinotta, M&C and Summit Partners are liable under Section 15 of the Securities Act for GCA's violation of Section 11.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) declaring this action to be a proper class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying the Plaintiff

as the Class representative and appointing his counsel as Class Counsel;

      (b)    appointing Plaintiff as the Lead Plaintiff pursuant to Section 27 of the Securities Act;

      (c)    awarding Plaintiff and other members of the Class damages together with interest thereon;

      (d)    awarding Plaintiff and other members of the Class damages pursuant to the provisions of Section 11(e) of the Securities Act on Counts I and III;

      (e)    awarding Plaintiff and other members of the Class rescission or a rescissory measure of damages pursuant to Section 12(b) of the Securities Act on Counts II and III; and

      (f)    awarding Plaintiff and the other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff, pursuant to Fed. R. Civ. P. 38(b), hereby demands a trial by jury.

DATED: April 11, 2008

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

*/s/ Jeffrey S. Abraham*

Jeffrey S. Abraham
Philip T. Taylor
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Attorneys for Plaintiff Robert Lowinger**

## CERTIFICATION OF PLAINTIFF

Robert Lowinger ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff executed the following transactions in the stock of Global Cash Access, Inc. "GCA") with respect to shares bought pursuant to or traceable to the initial public offering ("IPO") of GCA: _I bought 100 shares at the IPO price of $14 and still own all the shares_.

5. In the past three years, plaintiff has to serve, as a representative party on behalf of a class in an action filed under the federal securities laws: Lowinger v. Fair Point Communications, Inc., et al., (D.N.C.).

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of March, 2008.

_____
**Robert Lowinger**