UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

-against-

GLOBAL CASH ACCESS HOLDINGS, INC., KIRK SANFORD, KARIM MASKATIYA, ROBERT CUCINOTTA, M&C INTERNATIONAL, SUMMIT PARTNERS, L.P., GOLDMAN SACHS & CO., INC. and J.P. MORGAN SECURITIES, INC.,

Defendants.

---

No. 08 CV 3516 (SWK)

# MEMORANDUM OF LAW IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEVADA

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
FACTUAL BACKGROUND ..... 2
ARGUMENT ..... 5
I. TRIAL EFFICIENCY AND THE INTERESTS OF JUSTICE FAVOR TRANSFER ..... 7
II. THE LOCUS OF OPERATIVE FACTS AND LOCATION OF RELEVANT EVIDENCE FAVORS TRANSFER ..... 9
III. THE CONVENIENCE OF THE WITNESSES AND PARTIES, AND THE AVAILABILITY OF PROCESS, FAVOR TRANSFER TO THE DISTRICT OF NEVADA ..... 10
IV. PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE DEFERENCE ..... 12
CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adair v. Microfield Graphics, Inc.*,
No. 00 Civ. 0629,
2000 U.S. Dist. LEXIS 16591 (S.D.N.Y. Nov. 15, 2000) ........ 11

*Berg v. First Am. Bankshares, Inc.*,
576 F. Supp. 1239 (S.D.N.Y. 1983) ........ 8

*Berman v. Informix Corp.*,
30 F. Supp. 2d 653 (S.D.N.Y. 1998) ........ 7, 10, 11, 13

*Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*,
537 F. Supp. 1241 (S.D.N.Y. 1982) ........ 4, 8

*Dutchen* v. *Ecological Sci. Corp.*,
54 F.R.D. 493 (S.D.N.Y. 1971) ........ 10

*First City Nat'l Bank and Trust Co. v. Simmons*,
878 F.2d 76 (2d Cir. 1989) ........ 7

*Frene N.V. v. Kmart Corp.*,
No. 96 Civ. 9585,
1998 U.S. Dist. LEXIS 11572 (S.D.N.Y. July 29, 1998) ........ 11

*In re Collins & Aikman Corp. Sec. Litig.*,
438 F. Supp. 2d 392 (S.D.N.Y. 2006) ........ 6

*In re Connetics Sec. Litig.*,
No. 06 Civ. 11496 (SWK),
2007 U.S. Dist. LEXIS 38480 (S.D.N.Y. May 23, 2007) ........ 6, 9, 12

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998) ........ 6, 8, 10, 12

*In re Warrick*,
70 F.3d 736 (2d Cir. 1995) ........ 7, 12

*JM Computer Servs., Inc. v. Schlumberger Tech., Inc.*,
886 F. Supp. 358 (S.D.N.Y. 1995) ........ 11

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
No. 05 Civ. 5255,
2005 U.S. Dist. LEXIS 23004 (S.D.N.Y. Oct. 6, 2005) ........ 5, 10

*Levine v. Fin. Programs, Inc.*,
318 F. Supp. 952 (S.D.N.Y. 1969) ....................12

*MBCP Peerlogic LLC v. Critical Path, Inc.*,
No. 02 Civ. 3310,
2002 U.S. Dist. LEXIS 23268 (S.D.N.Y. Dec. 4, 2002) ....................9, 10

*PRPJ Bergen, Inc. v. Plate*,
774 F. Supp. 200 (S.D.N.Y. 1991) ....................9

*Schneider v. Sears*,
265 F. Supp. 257 (S.D.N.Y. 1967) ....................7

*Shulof v. Westinghouse Elec. Corp.*,
402 F. Supp. 1262 (S.D.N.Y. 1975)....................13

*Tucker Anthony, Inc. v. Bankers Trust Co.*,
No. 93 Civ. 0257 (SWK),
1994 U.S. Dist. LEXIS 128 (S.D.N.Y. Jan. 7, 1994)....................7, 8

*U.S. Fid. & Guar. Co. v. Republic Drug Co.*,
800 F. Supp. 1076 (E.D.N.Y. 1992) ....................11

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)....................8

**STATUTES**

15 U.S.C. § 77v(a) ....................6

28 U.S.C. § 1404(a) ....................1, 5, 8, 13

Defendants Global Cash Access Holdings, Inc. ("Global Cash Access"), Kirk Sanford, Karim Maskatiya, Robert Cucinotta, M&C International, and Summit Partners, L.P., move to transfer venue to the District of Nevada, pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

Plaintiff in this securities class action alleges that Global Cash Access made materially false and misleading statements by improperly computing the amount of commissions it was required to pay to its gaming establishment customers, resulting in understated expenses and overstated gross profit margins and net income. Plaintiff, however, is not the first to make these allegations. Two earlier derivative actions (now consolidated) filed in the District of Nevada (*Stueve v. Sanford et al.*, Case No. 2:07-cv-01659 (D. Nev.) (filed Dec. 12, 2007) and *Mollenkopf v. Kortschak*, Case No. 2:08-cv-00171 (D. Nev.) (filed Feb. 8, 2008)) make the same allegations. All three of the individual defendants in this case are also defendants in the Nevada case.

The transfer of this case to the District of Nevada will serve justice, will avoid the risk of inconsistent decisions, and will allow that same court to hear substantive motions and coordinate discovery, thereby preventing defendants and non-parties from having to respond to the same discovery and to address the same allegations in overlapping proceedings in two different judicial districts. In addition, Global Cash Access is headquartered in Las Vegas and it calculated commissions and handled all other accounting related matters in Nevada, so the District of Nevada is the locus of the operative facts and is the location of the witnesses and documents that are central to plaintiff's allegations. All these factors make the District of Nevada a more appropriate venue for this case.

In contrast, the Southern District of New York is inconvenient for the nonparty witnesses and most defendants, and merely because plaintiff chose to file suit here and the two underwriter defendants have their principal places of business in New York is not a sufficient basis to deny transfer. These large institutional underwriters played the traditional role of an underwriter in an initial public offering and were not involved in Global Cash Access's business operations. Also, they are accustomed to doing business throughout the country and do not oppose this motion to transfer.

On these facts, transfer will foster justice and judicial efficiency. To achieve these goals and for the convenience of the witnesses and most of the parties, venue of this action should be transferred to the District of Nevada.

**FACTUAL BACKGROUND**

Global Cash Access. Global Cash Access is headquartered in Las Vegas, Nevada. Class Action Complaint, filed April 11, 2008 ("Compl."), ¶ 7. Through its subsidiaries, Global Cash Access provides cash access products and related services to the gaming industry in the United States and several international markets. *Id.* Its products and services provide gaming establishment patrons access to cash through a variety of methods, including Automated Teller Machine cash withdrawals, credit card cash advances, point-of-sale debit card transactions, check verification and warranty services, and money transfers. *Id.* ¶¶ 7, 25.

The company generates revenue from the service fees it charges gaming establishment patrons for access to cash. *Id.* ¶ 26. In turn, it pays commissions to the gaming establishments, calculated according to contracts with those establishments. *Id.* ¶ 27. These commissions are the largest component of Global Cash Access's cost of revenues. *Id.*

The Related Nevada Actions. On December 12, 2007, a shareholder derivative action was filed against nominal defendant Global Cash Access and eleven of its directors and officers in the District of Nevada. Declaration of Darryl P. Rains, executed on June 5, 2008 ("Rains Decl."), ¶ 2. That action was consolidated with a subsequently filed action in the same court and is now captioned *In re Global Cash Access Holdings, Inc. Derivative Litigation*, Lead Case No. 2:07-cv-01659-JCM-PAL (D. Nev.). *Id.* ¶¶ 3-5. The original complaints and the consolidated complaint, filed on May 5, 2008, allege that Global Cash Access's "cost of revenues, and in particular its commissions, were understated" because its "internal controls were materially deficient such that commissions could not be accurately tracked." *See id.* Ex. A, ¶¶ 2, 69. The consolidated complaint maintains that these alleged truths were revealed by Global Cash Access's November 14, 2007 press release, a December 7, 2007 conference call, and a January 30, 2008 quarterly report. *Id.* Ex. A, ¶¶ 64-67. Defendants' responses to the consolidated complaint are due June 19, 2008. *Id.* ¶ 6.

This Action. Four months after the first Nevada action was filed, plaintiff filed this class action in the Southern District of New York, naming Global Cash Access and three of the same individual defendants. Just like the Nevada actions, plaintiff here alleges that the company was "unable to accurately calculate . . . commissions" because its "internal controls were deficient," resulting in understated expenses. Compl. ¶ 29. Just like the Nevada actions, plaintiff here relies on Global Cash Access's November 14, 2007 press release, December 7, 2007 conference call, and January 30, 2008 quarterly report, to support his claims. *Id.* ¶¶ 31, 33, 35.[1]

---

[1] Plaintiff here alleges that Global Cash Access made materially false and misleading statements in connection with its initial public offering by improperly computing commissions, resulting in understated expenses and overstated gross profit margins and net income in the company's registration statement and prospectus, and asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, as amended. Compl. ¶¶ 1, 2, 29, 38, 50. Plaintiffs in the

(Footnote continues on next page.)

The Parties. Plaintiff – Robert Lowinger – seeks to represent a class of investors who purchased shares of Global Cash Access in its September 2005 initial public offering. *Id.* ¶ 16. The complaint does not disclose plaintiff's residence. Members of the putative class presumably live all over the United States.

The corporate defendants are Global Cash Access, M&C International, and Summit Partners, L.P. Global Cash Access has always managed its business from its Las Vegas, Nevada headquarters. Rains Decl. ¶ 7. M&C International is a Nevada corporation based in San Jose, California. Compl. ¶ 11. Summit Partners, L.P., is an investment fund with offices in Boston, Palo Alto, and London. Rains Decl. ¶ 22. Both M&C International and Summit Partners are alleged to be shareholders of Global Cash Access at the time of its initial public offering. Compl. ¶¶ 11-12.

Plaintiff also names Goldman Sachs & Co. (incorrectly identified by plaintiff as Goldman Sachs & Co., Inc.) and J.P. Morgan Securities Inc. – two underwriters of Global Cash Access's initial public offering – as defendants. These underwriters are not alleged to have played any role in the calculation or payment of commissions to Global Cash Access customers. Rains Decl. ¶ 23. These are large, global investment banking and securities firms whose principal places of business are in New York City. Both entities do not oppose the present motion to transfer this action to the District of Nevada. *Id.*

---

(Footnote continued from previous page.)

consolidated shareholder derivative case seek to remedy alleged violations of state law that allegedly occurred between December 2006 and the present. Rains Decl. Ex. A, ¶1. Although the legal theories in the two cases are different, the factual bases are the same and, therefore, transfer is appropriate. *See Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1244 (S.D.N.Y. 1982) (even if the two actions allege different claims, a transfer is appropriate if the "two actions hinge upon the same factual nuclei").

The individual defendants are Kirk Sanford, Karim Maskatiya, and Robert Cucinotta. All are former Global Cash Access board members. *Id.* ¶ 21; Compl. ¶¶ 8-10. Mr. Sanford is also the company's former chief executive officer and president. Compl. ¶ 8. Mr. Sanford resides in Las Vegas. Rains Decl. ¶ 20. Mr. Maskatiya co-founded Global Cash Access with Mr. Cucinotta. Compl. ¶¶ 9-10. Both reside in Florida. Rains Decl. ¶ 20. All three individual defendants are named in the related Nevada actions. *Id.* ¶ 5.

<u>The Non-Party Witnesses</u>. Many present and former Global Cash Access employees were involved in the company's initial public offering or have been involved in the calculation and payment of commissions, the preparation of financial statements, and the design of Global Cash Access's internal controls. These potential non-party witnesses – employees in accounting, audit, compliance, customer relations, finance, and sales, as well as the company employees involved in the due diligence process and with drafting the registration statements and prospectuses – are, almost without exception, located in or around Las Vegas. Rains Decl. ¶ 18; *id.* ¶ 7-9. The District of Nevada is a much more convenient forum for them and is the judicial district in which they are subject to the subpoena power of a federal court. *Id.* ¶ 18. The company is not aware of any potential non-party witnesses, let alone any vital witnesses, who are located in New York. *Id.*

## ARGUMENT

Section 1404(a) provides for the transfer of a case to another venue if (1) venue would be proper in the proposed new court, (2) the transfer would serve "the convenience of parties and witnesses," and (3) the transfer would promote "the interests of justice." 28 U.S.C. § 1404(a).

Courts have discretion to transfer based on these factors. *Langley Partners, L.P. v. Tripath Tech., Inc.*, No. 05 Civ. 5255, 2005 U.S. Dist. LEXIS 23004, at *3 (S.D.N.Y. Oct. 6,

2005); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 399-400 (S.D.N.Y. 1998). In exercising its discretion, a court should consider trial efficiency and the interests of justice, the locus of operative facts, the location of relevant documents, the convenience of the parties and witnesses, the availability of process to compel the attendance of non-party witnesses, and the plaintiff's choice of forum. *See, e.g., In re Connetics Sec. Litig.*, No. 06 Civ. 11496 (SWK), 2007 U.S. Dist. LEXIS 38480, at *7-8 (S.D.N.Y. May 23, 2007).[2]

Based on these factors, transfer to the District of Nevada would be more fair, more efficient, and more convenient. Venue is proper there. *See* 15 U.S.C. § 77v(a) ("Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendants may be found."). Justice will be better served because the court in Nevada could then coordinate this action with the already pending consolidated derivative case that alleges the same facts as the present complaint. Further, Global Cash Access is based there, the operative facts occurred there, the relevant witnesses are there, and the relevant documents are there. It is also a more convenient forum for most of the parties.

The only other factor – plaintiff's choice of forum – is, on these facts, not entitled to deference. Plaintiff seeks to represent a nationwide class of investors. Plaintiff's convenience is

---

[2] Two other factors sometimes addressed – the relative means of the parties and the forum's familiarity with the governing law – are neutral here. Plaintiff has the means to litigate in Las Vegas. In 2004, he filed suit in Las Vegas in the 8th Judicial District Court for Clark County against Mandalay Resort Group (Case No. A486782). Rains Decl. ¶ 24. Plaintiff also has been a plaintiff in several other securities cases, including suits in California, Connecticut, New York, North Carolina, Pennsylvania, and Texas. *Id.* ¶¶ 24-25. And, both the Southern District of New York and the District of Nevada "are equally capable of applying federal securities laws." *Connetics*, 2007 U.S. Dist. LEXIS 38480, at *26-27 (citing *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 398 (S.D.N.Y. 2006)).

not entitled to consideration in a class action of this sort, particularly in light of all the other factors supporting a transfer. *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("the plaintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action").

## I. TRIAL EFFICIENCY AND THE INTERESTS OF JUSTICE FAVOR TRANSFER

Justice would be far better served by the transfer of this case to the District of Nevada so that it can be coordinated with the consolidated derivative case pending there. *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998) ("trying all the related actions in [the transferee district] is far more efficient than allowing separate actions to proceed in" two separate districts); *Schneider v. Sears*, 265 F. Supp. 257, 266–67 (S.D.N.Y. 1967) (transferring shareholder actions to venue where several similar actions were pending). This class action and the Nevada case involve the same parties and arise from the same core allegations regarding Global Cash Access's alleged miscalculation of commissions. The actions have four defendants in common. They arise from essentially the same alleged facts (*compare* Compl. ¶ 29 *with* Rains Decl. Ex A, ¶ 69), and rely on the same recent company statements (*compare* Compl. ¶¶ 31, 33, 35 *with* Rains Decl. Ex A, ¶ 64-67).

Transfer to the District of Nevada would allow for coordination of this action with the Nevada actions that were filed months earlier in that district.[3] This will reduce the burdens of

---

[3] Because this case embraces the same issues as the consolidated derivative case, transfer of venue to the District of Nevada is also appropriate pursuant to the "first-filed" rule. *See Tucker Anthony, Inc. v. Bankers Trust Co.*, No. 93 Civ. 0257 (SWK), 1994 U.S. Dist. LEXIS 128, at *28 (S.D.N.Y. Jan. 7, 1994) ("Generally, courts order transfer of an action because of the presence of pending litigation in the proposed transferee forum under the 'first-filed rule.'"). A party seeking to overcome the first-filed rule must show "special circumstances supporting a different result." *Id.* at 28-29; *see also First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (first-filed suit should have priority "absent the showing of a balance of

(Footnote continues on next page.)

discovery, avoid the risk of inconsistent obligations or rulings on procedural and substantive issues and allow for more efficient adjudication of both of these cases.

A transfer is appropriate if "two actions hinge upon the same factual nuclei," even if the two actions allege different claims. *See Durham*, 537 F. Supp. at 1243-44 ("litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and inconsistent results") (internal quotations omitted).[4] The purpose of Section 1404(a), after all, is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

The interests of justice also favor transfer to the District of Nevada. The alleged misrepresentations and omissions in Global Cash Access's registration statement and prospectus issued from Global Cash Access's Las Vegas headquarters. Rains Decl. ¶ 17. Thus, the District of Nevada has the greatest interest in adjudicating plaintiff's claims. The District of Nevada is also a less congested forum, which will benefit this Court and all parties. *Id.* ¶ 26; *see also Nematron*, 30 F. Supp. 2d at 407.

---

(Footnote continued from previous page.)

convenience or special circumstances giving priority to the second [suit]") (internal quotations omitted).

[4] Section 1404(a) dictates transfer whether or not there is a possibility of consolidation. *See Tucker Anthony*, 1994 U.S. Dist. LEXIS 128, at *32 ("a motion to transfer should be granted to avoid questions of claim and issue preclusion, even if there is no possibility of consolidation, as long as the litigation involves related issues and parties"); *Berg v. First Am. Bankshares, Inc.*, 576 F. Supp. 1239, 1243-44 (S.D.N.Y. 1983) ("Even if it were improbable that the two cases would be consolidated upon transfer . . . the fact that they are intimately related remains a strong reason for transfer.").

## II. THE LOCUS OF OPERATIVE FACTS AND LOCATION OF RELEVANT EVIDENCE FAVORS TRANSFER

This Court has held that a "core determination" under Section 1404(a) is "the center of gravity of the litigation and courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *MBCP Peerlogic LLC v. Critical Path, Inc.*, No. 02 Civ. 3310, 2002 U.S. Dist. LEXIS 23268, at *13 (S.D.N.Y. Dec. 4, 2002) (internal quotations omitted). Transfer is warranted where the transferee forum "is the situs of the majority of operative facts" and "the key witnesses and documents are predominantly located" there. *PRPJ Bergen, Inc. v. Plate*, 774 F. Supp. 200, 204 (S.D.N.Y. 1991).

The center of gravity of this case unquestionably is Las Vegas, Nevada. Global Cash Access calculates and pays commissions and reports transactions from its Las Vegas headquarters. Rains Decl. ¶ 10. The company calculates its costs of revenues, conducts its financial analysis for purposes of public reporting, and prepares its financial reports at its headquarters. *Id.* ¶ 12. The company prepares its press releases and periodic filings, and hosts its conference calls from its headquarters. *Id.* ¶¶ 15-16. Its contracts and accounting documents are maintained there. *Id.* ¶¶ 11, 13. Global Cash Access's registration statement and prospectus issued from the company's headquarters. *See, e.g.*, *Connetics*, 2007 U.S. Dist. LEXIS 38480, at *18-19 ("misrepresentations or omissions occur where the misrepresentations are issued") (internal quotations omitted). They were prepared in Las Vegas as well as at the Palo Alto, California office of the law firm of Morrison & Foerster LLP. Rains Decl. ¶ 17. Deloitte & Touche audited the allegedly inaccurate financial statements from its Las Vegas office. *Id.* ¶ 19.

Thus, the relevant events occurred in Las Vegas and the overwhelming majority of relevant documents – including those relating to commissions, the impact of commissions on company financial statements, and the company's public statements – are located in Las Vegas.

*Id.* ¶¶ 10-17. Securities class actions may require large productions of documents, and the location of those documents is a relevant convenience factor. *Berman*, 30 F. Supp. 2d at 658 (transferring to forum "where the documents are located now"). These factors point decisively toward the District of Nevada.

### III. THE CONVENIENCE OF THE WITNESSES AND PARTIES, AND THE AVAILABILITY OF PROCESS, FAVOR TRANSFER TO THE DISTRICT OF NEVADA

Evaluating the "center of gravity" of the litigation also involves an evaluation of the most convenient forum for witnesses and the parties. *MBCP Peerlogic*, 2002 U.S. Dist. LEXIS 23268, at *8-9 ("Convenience of both the party and non-party witnesses" can be "the single-most important factor in the analysis of whether transfer should be granted.").

The District of Nevada is easily the most convenient forum for party and non-party witnesses. The important witnesses, those with the vast majority of the relevant information, will be current and former Global Cash Access employees. Virtually all those employees live and work in and around Las Vegas. Rains Decl. ¶ 18; *id.* ¶ 7-9. Courts recognize that, in securities class actions, "the greatest sources of evidence must be the defendants and their employees." *Dutchen v. Ecological Sci. Corp.*, 54 F.R.D. 493, 496 (S.D.N.Y. 1971). Courts in this district thus regularly grant motions to transfer securities actions where the company and its officers and employees are located in another district. *See, e.g.*, *Langley Partners*, 2005 U.S. Dist. LEXIS 23004, at *8 (transferring securities case to district where issuer located); *Nematron*, 30 F. Supp. 2d at 402 ("It is well known that trials in securities class actions focus almost entirely on the defendants' conduct.").

Similarly, the important non-party witnesses are predominately subject to process in the District of Nevada, which means they could be compelled to attend and testify in person at trial – a fact that may be vital to a fair presentation of defendants' case at trial. "When more potential

witnesses are within the subpoena power of the proposed transferee venue than the transferor venue, this factor weighs in favor of transfer." *Frene N.V. v. Kmart Corp.*, No. 96 Civ. 9585, 1998 U.S. Dist. LEXIS 11572, at *14 (S.D.N.Y. July 29, 1998); *see also Adair v. Microfield Graphics, Inc.*, No. 00 Civ. 0629, 2000 U.S. Dist. LEXIS 16591, at *9 (S.D.N.Y. Nov. 15, 2000) ("the risk that certain out-of-state, non-party witnesses may be unwilling or unable to appear at a trial in New York" favors transfer). Furthermore, many of these potential non-party witnesses might be called to testify in the related Nevada case. Coordination by one court will ease the burden placed on them.

The District of Nevada is also the most convenient forum for the defendants. In assessing the convenience of the parties, "the logical starting point is a consideration of [their] residence." *U.S. Fid. & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). Global Cash Access's entire management team is located in Las Vegas. Rains Decl. ¶ 7; *see Berman*, 30 F. Supp. 2d at 657 (transferring action to forum where company's senior management resided); *JM Computer Servs., Inc. v. Schlumberger Tech., Inc.*, 886 F. Supp. 358, 358-59 (S.D.N.Y. 1995) (transferring action because "most of the personnel responsible for [defendant's business] practices are located in its headquarters"). None of the individual defendants reside in New York. Mr. Sanford, a former officer of Global Cash Access, resides in Las Vegas. Rains Decl. ¶ 20. Mr. Maskatiya and Mr. Cucinotta reside in Florida. *Id.* The District of Nevada is a more convenient forum for M&C International and Summit Partners, L.P. Both are based in California. *Id.* ¶ 22. Neither have a presence in New York. *Id.*

Because plaintiff's Securities Act claims are brought on the basis of multiple company statements, trial of this action may last several weeks. The defendants should not, without compelling reason, be forced to defend themselves in a distant forum for such a long period of

time. *See Levine v. Fin. Programs, Inc.*, 318 F. Supp. 952, 954 (S.D.N.Y. 1969) (litigation in distant forum would "greatly inconvenience[]" individual defendants and "force [them] to be absent from their required tasks and families").

The fact that the underwriter defendants have their principal places of business in New York does not change this analysis. These large institutions are accustomed to doing business throughout the country and are not opposing this motion. Rains Decl. ¶ 25. This Court addressed similar facts in *Connetics* and transferred the case. *Connetics*, 2007 U.S. Dist. LEXIS 38480, at *21-22. In that securities class action, as in this one, the issuer was headquartered in the proposed transferee forum and two underwriter defendants maintained their principal place of business in the Southern District of New York. *Id.* at *4-5. There also the underwriter defendants raised no objections to the requested transfer. *Id.* at *14-15.

Given that this is a securities class action, plaintiff's residence "has diminished relevance." *See Nematron*, 30 F. Supp. 2d at 403, 407 (transferring securities class action from New York even though plaintiff resided in New York). Furthermore, plaintiff purports to bring this action on behalf of a broad, nationwide class of purchasers of Global Cash Access securities. Since class members not residing in this district "will be inconvenienced regardless of whether the instant suit proceeds in this District or the [transferee forum], the plaintiff['s] residence provides no support for keeping this suit in New York." *Connetics*, 2007 U.S. Dist. LEXIS 38480 at *15.

## IV. PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE DEFERENCE

While in some circumstances plaintiff's choice of forum is entitled to deference, those circumstances do not exist in a class action where the chosen forum bears no connection to the events in litigation. *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("the plaintiff's

choice of forum is a less significant consideration in a . . . class action than in an individual action"). Any deference to the plaintiff's choice of forum is reduced even further in securities class actions. *See Shulof v. Westinghouse Elec. Corp.*, 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975) (giving "little weight" to a plaintiff's choice of forum in stockholder class actions); *Berman*, 30 F. Supp. 2d at 659-60 (a plaintiff's choice of forum also "carries far less weight" in a large securities class action where members of the class are dispersed throughout the nation).

## CONCLUSION

The factors used to determine whether transfer is appropriate under 28 U.S.C. § 1404(a) overwhelmingly favor transfer of venue to the District of Nevada. Defendants' motion should, therefore, be granted.

Dated: New York, New York
June 6, 2008

MORRISON & FOERSTER LLP

By: ______________________
Joel C. Haims (jhaims@mofo.com)
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8238
Facsimile: (212) 468-7900

MORRISON & FOERSTER LLP
Darryl P. Rains*
Erik J. Olson*
755 Page Mill Road
Palo Alto, CA 94304-1018
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
*Not admitted to practice before this Court

*Attorneys for Defendants Global Cash Access Holdings, Inc., Kirk Sanford, Karim Maskatiya, Robert Cucinotta, M&C International, and Summit Partners, L.P*