UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
:
ROBERT LOWINGER, Individually an On :
Behalf of All Others Similarly Situated, :
 :
                    Plaintiff,         :    Civil Action No. 08-3516 (SWK)
 :
   vs.                                 :
 :    ECF Case
GLOBAL CASH ACCESS HOLDINGS, INC., :
KIRK SANFORD, KARIM MASKATIYA,   :
ROBERT CUCINOTTA, M&C            :
INTERNATIONAL, SUMMIT PARTNERS, L.P., :
GOLDMAN SACHS & CO., INC. and J.P. :
MORGAN SECURITIES, INC.,         :
 :
                    Defendants.        :
 :
---------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
ROBERT LOWINGER'S MOTION: (I) TO BE APPOINTED
LEAD PLAINTIFF; AND (II) APPROVING THE SELECTION OF
THE FIRM ABRAHAM, FRUCHTER & TWERSKY, LLP, AS LEAD COUNSEL**


Jeffrey S. Abraham (JA-2946)
Philip T. Taylor (PT-5023)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Proposed Lead Counsel for Plaintiffs**

Plaintiff Robert Lowinger ("Plaintiff"), by his undersigned counsel, respectfully submits this memorandum of law in support of his motion to appoint him as the lead plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77z-1(a)(3)(B), and to approve his selection of the firm of Abraham, Fruchter & Twersky, LLP as lead counsel.

**SUMMARY OF ACTION**

This is a class action arising out of materially misleading statements in connection with the initial public offering ("IPO" or the "Offering") of Global Cash Access Holdings, Inc. ("GCA or the "Company"). Complaint ¶1.[1] The prospectus (the "Prospectus") pursuant to which the IPO was accomplished failed to disclose that the Company falsely reported its commission expense during 2005 and failed to disclose that GCA's internal controls were inadequate to insure the proper payment of commissions and the proper reporting of the Company's financial condition. Complaint ¶¶ 28-29 and 35.

In the IPO, 16,064,157 shares of GCA Common Stock priced at $14.00 per share were offered and sold to Plaintiff and other members of the investing public raising a total of more than $256 million. Complaint ¶24. The Prospectus was filed as part of a Form S-1/A registration statement (the "Registration Statement") with the Securities and Exchange Commission ("SEC") on September 22, 2005, the closing of which took place in New York, New York on September 28, 2005. Complaint ¶1.

GCA, through its subsidiaries, provides cash access products and related services to the gaming industry in the United States and internationally. Complaint ¶7. Its products include

---

[1] The use of the term Complaint in this brief refers to the Class Action Complaint filed in this action. *See* Docket No. 1.

cash access products and services, information services, cashless gaming products, and credit card servicing. Complaint ¶¶22 and 25. GCA's revenues came from the service fees it charges gamblers (or other customers) seeking a cash advance. Complaint ¶26. The largest costs are the interchange fees it pays, usually to Visa and MasterCard, and the commission GCA pays the gaming establishment at which its services are offered. Complaint ¶¶27-28.

The Prospectus was materially false or misleading because it failed to disclose that: (a) the Company's internal controls were deficient causing its finance and accounting departments to be unable to accurately calculate the amount of commissions payable to the Company's customers; (b) GCA had improperly computed the amount of commissions it was required to pay many of its customers resulting in the Company failing to comply with contractual terms; and (c) GCA's expenses (*i.e.* cost of revenues) during 2005 were understated resulting in an overstatement of gross profit margins and net income. Complaint ¶29.

On November 14, 2007, GCA issued a press release announcing that it would be delaying the filing of its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2007 pending the conclusion of an internal investigation. Complaint ¶31. That investigation was being conducted under the direction of the Audit Committee of the Board of Directors, with the assistance of independent counsel into allegations of improprieties at the Company. *Id.* The precise nature of the allegations were not disclosed nor was the identity of the individual making those allegations. *Id.* In reaction to this announcement, GCA's Common Stock plummeted in price from its previous price of $9.20 to close at $3.71 per share on very high volume. Complaint ¶32.

On December 7, 2007, Scott Betts, the newly installed and current President and CEO of

GCA spoke on a conference call with respect to the previously reported internal investigation stating that: there existed an ongoing issue with a lack of internal controls over payment systems and the Audit Committee investigated that issue; the Audit Committee investigation uncovered problems with respect to the computation of commission payments to twenty customers and the reporting of transactions to another 100 customers. Complaint ¶33. Mr. Betts, however, declined to review many of the details of the allegations made, which prompted the Audit Committee investigation. *Id.*

On January 30, 2008, the Company reported that it would record $2.6 million in additional commission costs; $1.9 million of that amount related to transactions completed in 2005 and 2006. Complaint ¶35. Thus, GCA effectively acknowledged that its financial reports contained in the Prospectus were false and that the Company's internal controls at that time were inadequate to insure, among other things, the proper payments of commissions owed and the proper reporting of GCA's financial condition and financial results.

## ARGUMENT

### I. THE SECURITIES ACT PROVIDES THAT A LEAD PLAINTIFF BE APPOINTED FOR CLAIMS BROUGHT AS A CLASS ACTION

On December 22, 1995, Congress amended the Securities Act by enacting the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) ("PSLRA"). Specifically, Section 27(a)(3) of the Securities Act provides that, within 20 days after the date on which a class action is filed,

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on

> which the notice is published, any member of the purported class
> may move the court to serve as lead plaintiff of the purported class.

*See* 15 U.S.C. § 77z-1(a)(3).

On April 11, 2008, a notice was published on the Business Wire concerning the filing of this class action. *See* Exhibit A to the Declaration of Philip T. Taylor ("Taylor Decl."). The notice advised members of the purported class of the pendency of the action, the claims asserted and the purported class period. As a result, the notice satisfied all the requirements of the PSLRA. *See generally*, *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996).

Section 27(a)(3)(B) of the Securities Act directs the Court to consider any motions by purported class members to serve as lead plaintiffs in response to any such notice by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, and to presume that the "most adequate plaintiff" to serve as Lead Plaintiff is the person or group of persons who:

> (aa)   has either filed the complaint or made a motion in the response to a notice . . .;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)

That presumption may be rebutted where the otherwise presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interests of the class; and

    (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). The legislative intent of the PSLRA is generally to place control of federal securities class actions in the hands of institutional investors where possible. *Cf.*, *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2508 (2007) ("Congress prescribed new procedures for the appointment of lead plaintiff and lead counsel. This innovation aimed to increase the likelihood that institutional investors . . . would serve as lead plaintiffs.").

## II. PLAINTIFF ROBERT LOWINGER SHOULD BE APPOINTED THE LEAD PLAINTIFF FOR THE CLASS

Plaintiff Robert Lowinger satisfies the prerequisites for appointment as lead plaintiff. In addition, there are no deficiencies in his adequacy which would cause him to be an inappropriate choice to serve as lead plaintiff. Therefore, Mr. Lowinger brings this motion for the purpose of securing his appointment as lead plaintiff in this action and to obtain approval of his choice of lead counsel.

### A. Mr. Lowinger Has Filed A Complaint

The first requirement to being appointed a lead plaintiff is to have "either filed the complaint or made a motion in response to a notice . . . ." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa). Here, Mr. Lowinger filed a complaint which is the subject of the pending motion. As such, Mr. Lowinger satisfies the first prong of the most adequate plaintiff test.

### B. Mr. Lowinger Has The Requisite Financial Interest In The Relief Sought By The Class

The second prerequisite to being appointed a lead plaintiff is that "in the determination of the Court, [the plaintiff] has the largest financial interest in the relief sought by the Class" of

those persons moving to be appointed lead plaintiff.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

Mr. Lowinger purchased 100 shares of GCA's Common Stock in the IPO (*see* Certification of

Plaintiff, attached to the Complaint).

### C. Mr. Lowinger Otherwise Satisfies Rule 23

The lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the

Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides

that a party may serve as a class representative only if the following four requirements are

satisfied:

> (1)  the class is so numerous the joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests
> of the class.

Of the four prerequisites to class certification, only two  -- typicality and adequacy --

directly address the personal characteristics of the class representative.  Consequently, in

deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and

adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the

lead plaintiff moves for class certification.  *See, e.g.*, *Weinberg v. Atlas Air Worldwide Holdings,*

*Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citation omitted).  As detailed below, plaintiff

satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying her

appointment as lead plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of

those of the class.  Typicality exists if claims "arise[] from the same course of events, and each

class member makes similar legal arguments to prove the defendant's liability." *See*, *e.g.*, *In re*

Case 1:08-cv-03516-SWK    Document 13    Filed 06/10/2008    Page 8 of 9

*Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Instead, the Courts have recognized that:

> The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted).

Mr. Lowinger satisfies this requirement because, just like all other members of the Class, he purchased shares of GCA's Common Stock in the IPO. Thus, Mr. Lowinger's claims are typical of those of other Class members since his claims and the claims of other Class members arise out of the same course of events.

Rule 23(a)(4) provides that the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of plaintiff to represent the Class to the existence of any conflicts between the interests of the proposed lead plaintiff and the members of the Class. In this Circuit adequacy depends on: (1) whether the named Plaintiff and his counsel have any conflicts of interest with other class members; (2) whether class counsel is qualified and experienced; and (3) whether the named plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).

Here, Mr. Lowinger has no conflict with the interests of the Class. He wants to obtain the maximum recovery for the Class so as to maximize his pro rata share of that recovery. Mr. Lowinger and his counsel have also demonstrated that they will prosecute the claims of the Class vigorously by having acted to file a complaint asserting claims on behalf of the Class. Thus, Mr.

- 7 -

Lowinger satisfies the adequacy requirements of Rule 23.

### III.    THE COURT SHOULD APPROVE THE APPLICANT'S CHOICE OF COUNSEL

The Securities Act provides that the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v).  In that regard, Mr. Lowinger has selected and retained Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel.  Abraham, Fruchter & Twersky, LLP has the commitment and ability to accomplish the required tasks based upon, among other things, its extensive experience in prosecuting similar actions.  *See* Taylor Decl. Exhibit B.

### CONCLUSION

Therefore, for all the reasons set forth above, Plaintiff respectfully requests that the Court: (i) appoint Robert Lowinger as lead plaintiff in this action; and (ii) approve the selection of Abraham, Fruchter & Twersky, LLP as lead counsel.

Dated: June 10, 2008

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

/s/ Jeffrey S. Abraham
Jeffrey S. Abraham (JA-2946)
Philip T. Taylor (PT-1111)
One Penn Plaza, Suite 2805
New York, New York 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

**Proposed Lead Counsel for Plaintiffs**