Jay W. Eisenhofer (Bar No. JWE5503)
Michael J. Barry
Jeff A. Almeida
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:     (646) 722-8500
Facsimile:     (646) 722-8501

*Attorneys for City of Richmond Retirement System
 and Proposed Lead Plaintiff for the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *ROBERT LOWINGER,* Individually and On Behalf of All Others Similarly Situated,<br><br>                                          Plaintiff,<br><br>                    v.<br><br>*GLOBAL CASH ACCESS HOLDINGS, INC.*; *KIRK SANFORD*; *KARIM MASKATIYA*; *ROBERT CUCINOTTA*; *M&C INTERNATIONAL*; *SUMMIT PARTNERS, L.P.*; *GOLDMAN SACHS & CO., INC.*; and *JP MORGAN SECURITIES INC.*,<br><br>                                          Defendants. | No. 08-CV-3516 (SWK)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CITY OF RICHMOND  RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF COUNSEL** |

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

PROCEDURAL HISTORY..................................................................................................3

STATEMENT OF FACTS ...................................................................................................4

ARGUMENT........................................................................................................................6

I.     The PSLRA Favors Institutional Investors Who
Have A Large Financial Interest In The Lawsuit................................................................6

     A.     Richmond Has The Largest Financial Interest Of The Plaintiffs Who Have
Come Forward In This Class ................................................................8

     B.     Richmond Satisfies The Requirements Of Rule 23 ............................................9

          i.     Richmond's Claims Are Typical Of The Class's Claims .......................10

          ii.     Richmond Will Adequately Represent The Interests
Of The Class .......................................................................11

II.     The Court Should Approve Richmond's Choice Of Counsel........................................12

CONCLUSION...................................................................................................14

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
 MDL No. 02-1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003) .......................................... 8

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ............................................................................................ 12

*Cromer Fin. Ltd. v. Berger*,
 205 F.R.D. 113 (S.D.N.Y. 2001) ..................................................................................10-11

*Gesenhues v. Checchi,*
 No. 05-CIV-10653 (RJH), 2006 WL 1169673 (S.D.N.Y. May 3, 2006) .............................. 6

*Glauser v. EVCI Career Colleges Holding Corp.*,
 236 F.R.D. 184 (S.D.N.Y. 2006) ............................................................................... 7, 8, 9

*Hicks v. Morgan Stanley & Co.*,
 No. 01-CIV-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ......................... 10

*In re Nice Systems Sec. Litig.*,
 188 F.R.D. 206 (D.N.J. 1999)........................................................................................... 11

*In re Olsten Corp. Sec. Litig.*,
 3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................. 11

*In re Olsten Corp. Sec. Litig.*,
 181 F.R.D. 218 (E.D.N.Y. 1998) ........................................................................................ 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................... 9, 10

*In re Party City Sec. Litig.*,
 189 F.R.D. 91 (D.N.J. 1999) ............................................................................................... 8

*Skwortz v. Crayfish Co., Ltd.*,
 No. 00-6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ............................. 8, 11

*In re Universal Access Inc. Sec. Litig.*,
 209 F.R.D. 379 (E.D. Tex. 2002)...................................................................................... 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
　216 F.R.D. 248 (S.D.N.Y. 2003) ........................................................................................ 9

*The Zemel Family Trust v. Philips Int'l Realty Corp.*,
　205 F.R.D. 434 (S.D.N.Y. 2002) ........................................................................................ 7

### FEDERAL STATUTES AND RULES

15 U.S.C. § 78u-4(a)(3) ............................................................................................*passim*

FED. R. CIV. P. 23 ................................................................................................................. 9, 10

### OTHER AUTHORITIES

1 H. Newberg, *Newberg on Class Actions* § 3.13 (4th ed. 2007) ................................................. 10

Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369 (1995),
1995 WL 709276; S. REP. NO. 104-98 (1995), 1995 WL 372783 ................................................. 1

**PRELIMINARY STATEMENT**

City of Richmond Retirement System (hereinafter, "Richmond"), in connection with the securities fraud class action lawsuit filed against Global Cash Access Holdings, Inc. ("GCAH" or the "Company"); Kirk Sanford; Karim Maskatiya; Robert Cucinotta; M&C International; Summit Partners, L.P.; Goldman Sachs & Co., Inc.; and JP Morgan Securities Inc., hereby moves to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Richmond further moves for approval of its selection of the law firm of Grant & Eisenhofer P.A. to serve as Lead Counsel.

The relief sought by Richmond is precisely what the framers of the PSLRA hoped to accomplish by enacting the PSLRA's lead plaintiff provision – to have complex class actions arising under the federal securities laws controlled by large institutional investors. As Congress noted in the Statement of Managers, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369, at 34 (1995), 1995 WL 709276; S. REP. NO. 104-98 (1995), 1995 WL 372783. Richmond, with assets under management exceeding $550 million and over 9800 members, is exactly the type of large institutional investor envisioned by Congress as the most adequate lead plaintiff in securities class action suits.

As detailed in the certification submitted herewith, between September 22, 2005 and November 14, 2007 (the "Class Period"), Richmond purchased 34,255 shares of

stock in GCAH, suffering losses of over $181,000 in connection with its transactions. *See* Certification Of City Of Richmond Retirement System In Support Of Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("Richmond Certification"), attached as Exhibit A to the Declaration of Michael J. Barry In Support Of City of Richmond Retirement System's Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("Barry Decl."). In addition to evidencing Richmond's significant stake in the outcome of this litigation, the Richmond Certification demonstrates its desire to serve as lead plaintiff in this action, as well as its understanding of the attendant duties and obligations of serving in that role. *See id.*

Richmond is a large, well-established institutional investor with assets under management of more than $550 million. *See* Richmond Certification, Barry Decl., at Ex. A. Richmond lost $181,875 as a result of purchasing GCAH securities at artificially inflated prices. Richmond believes that its financial interest in this action is the largest of any class member seeking appointment as lead plaintiff in this action. Richmond is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that suffered greater losses due to defendants' fraud. In addition, Richmond satisfies each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and therefore is qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provision, Richmond is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the class.

Additionally, the Court should approve Richmond's selection of Grant & Eisenhofer P.A. as Lead Counsel. Richmond has retained counsel with substantial experience representing lead plaintiffs in securities class actions. Indeed, Richmond's

2

selection of counsel served as Lead Counsel or Co-Lead Counsel in some of the largest securities fraud cases in history including, *inter alia*, Tyco International, Marsh & McLennan, Parmalat, Global Crossing, Pfizer, and Refco. *See* Barry Decl., at Ex. D.

## PROCEDURAL HISTORY

Plaintiff Robert Lowinger commenced this class action by filing a Complaint with this Court on April 11, 2008, on behalf of all those who purchased securities of Global Cash pursuant to or traceable to the Company's initial public offering ("IPO") which commenced on September 22, 2005, and who held such shares of GCAH until November 14, 2007, and asserting claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, respectively 15 U.S.C. Sections 77k, 77l(a)(2) and 77o, against the following defendants: GCAH; current and former directors Kirk Sanford, Karim Maskatiya, and Robert Cucinotta; controlling shareholders M&C International and Summit Partners, L.P., and underwriters Goldman Sachs & Co., Inc. and JP Morgan Securities Inc. *Lowinger v. Global Cash Access Holdings, Inc.*, S.D.N.Y. No. 08-CV-3516 (SWK) (the "Litigation"). On that same date, Mr. Lowinger published notice of the commencement of his lawsuit on PRNewswire, a national business-oriented newswire service. *See* Barry Decl., Ex. B.

On May 22, 2008, Richmond published notice via PRNewswire of its intent to move for lead plaintiff in the Litigation asserting claims on behalf of an expanded class (the "Expanded Class") consisting of all those who purchased GCAH securities during the period between September 22, 2005 to November 14, 2007, inclusive, whether or not such purchases are traceable to the Company's IPO (the "Expanded Class Period"). Barry Decl., Ex. C. Further, Richmond disclosed that "If the City of Richmond Retirement System is appointed lead plaintiff of the Expanded Class, it intends to file a consolidated

3

complaint asserting claims on behalf of the Expanded Class against certain of GCA's officers and directors and other defendants for violating the federal securities laws, including claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sections 78j(b), and 78t, respectively, as well as claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933." *Id*.

On June 10, 2008, Richmond filed its Complaint in this Court, and filed the instant Motion Of City Of Richmond Retirement System For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel.

## STATEMENT OF FACTS

### Background Regarding GACH's Wrongdoing

GCAH is a public company organized under Delaware law whose primary asset is its wholly-owned operating subsidiary Global Cash Access, Inc. ("GCA"). GCAH and GCA are headquartered in Las Vegas, Nevada, and according to GCA's website, it is the leading providing of cash access services, providing cash access and customer relationship marketing technologies to the gaming industry. The Company delivers products and services to gaming properties throughout the United States and internationally. The Company's products and services allow patrons at gaming establishments (*e.g.*, casinos) to access cash through a variety of methods including ATM cash withdrawals, credit card cash advances, point-of-sale debit card transactions, check verification and warranty, and money transfers.

On November 14, 2007, GCAH announced that it would be delaying the filing of its Quarterly Report Form 10-Q for the period ending September 30, 2007, pending an internal investigation into undisclosed allegations being raised by a whistleblower. The market's reaction to this news was severe. GCAH's stock price plummeted $5.41 per

4

share from $9.20 on November 14, 2007 to $3.71 per share on November 15, 2007 – a one day decline of 60% on extremely heavy trading volume of nearly 3.8 million shares (versus the average daily volume of less than 500K shares). In this one trading day, over $400 million of market capitalization was wiped out.

In December 2007 and January 2008, the Company disclosed that the confidential investigation that had triggered the massive stock sell-off related to allegations that the Company had been improperly accounting for commissions payable to the gaming facilities where the Company held its operations, and admitted that the Company had, in fact, failed to pay the appropriate commissions to its gaming partners. Due to the fiercely competitive nature of GCAH's industry, analysts questioned the impact that GCAH's disclosures would have on its ability to maintain existing agreements with gaming facilities and to grow its operations into other gaming sites. As a result, the Company's stock price has never recovered from its November 2007 collapse.

As alleged in Richmond's Complaint, the Defendants engaged in a fraudulent scheme during the Class Period to artificially inflate the price of GCAH securities by issuing a series of materially false and misleading statements regarding the Company's practices, policies and internal controls and the impact of the same on its financial performance – essentially understating the Company's costs of revenues and liabilities, while at the same time over-stating its gross profit margins and net income. More specifically, GCAH fraudulently and recklessly concealed and misrepresented from investors that (a) the Company's internal controls were deficient, or were disregarded, causing it to be unable or unwilling to accurately calculate the amount of commissions payable to the Company's customers; (b) GCAH had improperly computed the amount of commissions it was required to pay many of its customers resulting in the Company

5

failing to comply with contractual terms, SEC rules and regulations, and federal securities laws; and (c) GCA's operating expenses (*i.e.* cost of revenues) during at least 2005 and 2006 were understated resulting in an overstatement of gross profit margins and net income at least for the periods December 31, 2005, December 26, 2006, and for the quarters ending March 31 and June 30, 2007.

## ARGUMENT

In determining which movant to appoint as lead plaintiff, the Court must consider two factors: (1) which movant has the largest financial interest in the litigation; and (2) does that movant meet the typicality and adequacy requirements of Rule 23. *See Gesenhues v. Checchi,* No. 05-CIV-10653 (RJH), 2006 WL 1169673, at *2 (S.D.N.Y. May 3, 2006)("The PSLRA . . . provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure"). Here, Richmond is exactly the type of large institutional investor envisioned by Congress as the most adequate lead plaintiff in a securities class action lawsuit. Further, Richmond has timely filed this motion in accordance with the statutory requirements and has the resources, expertise and the willingness to be fully involved in this litigation and to obtain the maximum possible compensation for class members. Accordingly, Richmond should be appointed as Lead Plaintiff and its selection of Lead Counsel should be approved.

## I. THE PSLRA FAVORS INSTITUTIONAL INVESTORS WHO HAVE A LARGE FINANCIAL INTEREST IN THE LAWSUIT

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of the notice announcing the filing of the action. 15 U.S.C. §78u-4(a)(3)(A)(i)(II); Barry Decl. at Ex. B (Notice of first filed

6

complaint). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. §78u-4(a)(3)(B)(i). Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may be overcome only by proof that the presumed lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses. *Id.* Courts construing this provision have held that institutional investors are presumptively the most adequate lead plaintiffs. *See, e.g.*, *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) (institutional investor's presumption of being the most adequate was not rebutted by other movants); *The Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (discussing Congressional intent while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA §21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

The PSLRA's lead plaintiff provision also serves to "ensure[ ] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999); *Skwortz v. Crayfish Co., Ltd.*, No. 00-6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs."). As set forth herein, Richmond is exactly the type of large institutional investor envisioned by the Congress in enacting the PSLRA, as it satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff. Richmond is a large, well-respected financial institution that manages millions of dollars and suffered substantial losses due to the fraud alleged in this action. As such, Richmond should be appointed as Lead Plaintiff in this action.

### A. Richmond Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Case.

Richmond believes that it has a greater financial interest in this action than any other class member who has come forward by virtue of its approximate damages of over $181,000. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 02-1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (appointing as lead plaintiff the institutional investor with the "largest financial stake in the litigation.").

Although the PSLRA does not mandate a particular method for calculating financial interest, "courts in this Circuit have traditionally examined the following four factors in calculating that interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period."

8

*Glauser*, 2006 WL 1302265, at *2 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). Here, Richmond lost $181,875 as a result of purchasing GCAH's securities at artificially inflated prices. Barry Decl., Ex. A. Richmond does not believe any other movant has a larger financial interest in this litigation.

### B. Richmond Satisfies The Requirements Of Rule 23.

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address the characteristics of the lead plaintiff under the PSLRA which must be satisfied. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citing *In re Party City*, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (citations omitted). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not

9

enter into the Court's analysis in its determination of who should serve as lead plaintiffs. Rather, the Court should defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (stating that the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification). Richmond meets both applicable requirements.

### i.    *Richmond's Claims Are Typical Of The Class's Claims*

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the claims of the class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citations omitted); *Hicks v. Morgan Stanley & Co.*, No. 01-CIV-10071 (HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted). *See also* 1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "is to ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y.

2001) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Here, Richmond's claims arise from the same course of conduct from which the claims of all other class members arise. As stockholders of GCAH, Richmond, like other members of the class, are innocent victims of defendants' fraudulent conduct. Richmond's losses, like the losses suffered by other members of the class, arise from the artificial inflation of GCAH's securities caused by the misrepresentations regarding the Company's financial performance. Thus, Richmond's claims are in all respects "typical" of the claims of the class.

### ii. *Richmond Will Adequately Represent The Interests Of The Class*

Rule 23(a)(4)'s requirement of adequate representation is satisfied: "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Skwortz*, 2001 WL 1160745, at *6. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citations omitted). Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Richmond easily meets the adequacy requirements.

Here, Richmond's interests are the same as those of other class members. Like other class members, Richmond seeks to hold the defendants liable for the consequences of their violations of the federal securities laws. There are no facts which indicate any conflicts of interest between Richmond and other class members.

Further, Richmond has the resources and sophistication to fulfill the statutory role of lead plaintiff. Richmond has a large and dedicated staff with the legal, financial and organizational expertise to effectively oversee this proceeding and direct the actions of lead counsel. The resources and sophistication at Richmond's disposal will serve the Class well, as it will permit Richmond to closely monitor the litigation and prosecute the case in the Class's best interest. *See* Richmond Certification, Barry Decl., at Ex. A.

Finally, as explained below, Richmond has chosen Grant & Eisenhofer P.A. as proposed Lead Counsel for the Class, a firm that is well-versed in securities law with substantial experience serving as lead plaintiff in large, complex securities litigation in this and other district courts across the country.

## II. THE COURT SHOULD APPROVE RICHMOND'S CHOICE OF COUNSEL

Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(v), Richmond selected and retained counsel to represent the Class, subject to the Court's approval. This Court should not disturb Lead Plaintiffs' choice of counsel unless it is necessary to protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff"). In that regard, Richmond

selected and retained the law firm of Grant & Eisenhofer P.A. as proposed Lead Counsel for the class.

Grant & Eisenhofer P.A. is among the preeminent securities class action law firms in the country and is currently serving as lead or co-lead counsel in several complex securities fraud cases involving, *inter alia*, Tyco International, Marsh & McLennan, Parmalat, Global Crossing, Pfizer, Alstom, and Refco. Grant & Eisenhofer achieved national recognition in representing institutional investors, particularly public pension funds, in federal securities fraud and related litigation. As lead counsel, the firm has recovered and collected over six billion dollars for shareholders. Grant & Eisenhofer has been lead counsel in some of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware Court of Chancery. *See* Grant & Eisenhofer biography attached to the Barry Decl. at Ex. D.

Accordingly, the Court should approve Richmond's selection of Grant & Eisenhofer P.A. as Lead Counsel for the Class.

## **CONCLUSION**

In light of the foregoing, Richmond respectfully requests that the Court (i) appoint Richmond to serve as Lead Plaintiff for the Class; and (ii) approve Richmond's selection of Grant and Eisenhofer P.A. to serve as Lead Counsel for the Class.

Dated: June 10, 2008

Respectfully submitted,

 s/ Michael J. Barry
Jay W. Eisenhofer (JE-5503)
Michael J. Barry
Jeff A. Almeida
GRANT & EISENHOFER P.A.
485 Lexington Avenue
29th Floor
New York, NY  10017
Tel:    (646) 722-8500
Fax:    (646) 722-8501
*Counsel for City of Richmond Retirement System and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, Jeff A. Almeida, hereby certify that a copy of the foregoing Memorandum of Law in Support of Motion of City of Richmond Retirement System for Appointment as Lead Plaintiff and for Approval of its Selection of Counsel was electronically filed and served via the Court's CM/ECF Filing System to all known counsel of record.

Dated: June 10, 2008

_____
Jeff A. Almeida