UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
IN RE GLOBAL CASH ACCESS HOLDINGS, : MASTER FILE NO. 08 CV 3516
INC. SECURITIES LITIGATION : (SWK)
:
This Document Relates to :
:
         ALL ACTIONS. :
:
:
:
:
:
:
:
:
------------------------------------------------------------ x

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CERTAIN
DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEVADA

pa-1270856

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.     THE DISTRICT OF NEVADA SHOULD MANAGE BOTH ACTIONS ...................... 2

II.    THE CONVENIENCE OF THE WITNESSES AND PARTIES FAVORS TRANSFER ................................................................................................................. 8

      A.     The Most Important Witnesses – Those Involved In The Calculation Of Commissions – Are In Nevada ................................................................................ 8

      B.     More Defendants And The Primary Representatives Of Defendants Are Located In Nevada. ................................................................................................... 9

III.   THE LOCUS OF OPERATIVE FACTS FAVORS TRANSFER ................................... 11

IV.   PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE DEFERENCE ....... 12

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*APA Excelsior III L.P. v. Premiere Techs, Inc.*,
    49 F. Supp. 2d 664 (S.D.N.Y. 1999)..................................................................................7

*Elec. Workers Pension Fund v. Nuvelo, Inc.*,
    No. 07 CIV 975, 2007 WL 2068107 (S.D.N.Y. July 20, 2007) ..............................................11

*Frene N.V. v. Kmart Corp.*,
    No. 96 Civ. 9585, 1998 WL 427688 (S.D.N.Y. July 29, 1998) ..................................................2

*Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006)................................................................................3, 7

*Funke v. Life Financial Corp.*,
    No. 99 Civ. 11877, 2003 WL 194204 (S.D.N.Y. Jan. 28, 2003).........................................7, 8

*Goggins v. Alliance Capital Management, L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003)..................................................................................7

*In re Collins & Aikman Corp. Sec. Litig.*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006)................................................................................10

*In re Connetics Sec. Litig.*,
    No. 06 Civ. 11496 (SWK), 2007 WL 1522614 (S.D.N.Y. May 23, 2007) .....................10, 11

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998)..............................................................................2, 10

*In re Shuffle Master, Inc. Sec. Litig.*,
    No. 07-cv-00715-KJD-RJJ (D. Nev. filed June 1, 2007).......................................................10

*In re Warrick*,
    70 F.3d 736 (2d Cir. 1995)..................................................................................................12

*MBCP Peerlogic, LLC v. Critical Path*,
    No. 02 Civ. 3310 (SWK), 2002 WL 31729626 (S.D.N.Y. Dec. 5, 2002) ................................9

*Tucker Anthony, Inc. v. Bankers Trust Co.*,
    No. 93 Civ. 0257 (SWK), 1994 WL 9683 (S.D.N.Y. Jan. 10, 1994) ..................................2, 7

*Unico Indus. Corp. v. S.S. Andros City*,
    323 F. Supp. 896 (S.D.N.Y. 1971)......................................................................................3

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE(S)**

*Williams v. Nat'l Hous. Exch. Inc.*,
   898 F. Supp. 157 (S.D.N.Y. 1995)......................................................................8, 9

*Wyndham Assocs. v. Bintliff*,
   398 F.2d 614 (2d Cir. 1968).....................................................................................3

**STATUTES**

28 U.S.C.
   § 1404(a) .................................................................................................2, 9, 12

## INTRODUCTION

Three simple facts make a compelling case for transfer of this action to Nevada. First, this case — a class action — is very similar to a pre-existing derivative action already pending in Nevada. Plaintiff argues that "the claims and legal issues" in the cases differ and, in a narrow sense, that is true, as this is a class action and that is a derivative action. Plaintiff must admit, though, that the cases involve the exact same facts and events, as they both arise out of the same internal investigation completed late last year. Judicial economy and convenience of the parties and witnesses thus suggest the cases should be assigned to the same court, where the judge can coordinate document discovery, depositions, and scheduling in an efficient manner.

Second, many of the key defendants, and most of the key witnesses, are located in Nevada. Five of the named defendants — including Global Cash Access, the main corporate defendant — are located in Nevada. Almost all of Global Cash Access's employees who will be witnesses live in Nevada. The auditors at Deloitte who are responsible for auditing Global Cash Access's financial statements are located in Las Vegas. By contrast, the only defendants in New York are the underwriters who, while important to the underwriting process, cannot be considered as central to this case as Global Cash Access and its employees. Plaintiff argues that Deloitte and certain non-party witnesses, like Skadden Arps and KPMG, have their headquarters in New York, but that is irrelevant, as the accountants, attorneys, and employees of those entities who actually worked on Global Cash Access matters are located in either Nevada or California.

Third, the events challenged in the action all occurred in Nevada, giving that forum the greatest interest in adjudicating the case. Plaintiff alleges that Global Cash Access miscalculated the commissions it charged to some of its customers and, as a result, misreported its commissions revenue in its prospectus. All of the commissions calculations were performed at

1

Global Cash Access's headquarters in Las Vegas, and the financial reports included in the prospectus were all prepared there. More importantly, the officers and employees primarily responsible for performing the commissions calculations and preparing the financial statements live in Nevada.

In response, plaintiff argues that the underwriters (Goldman Sachs and J.P. Morgan) performed some of their underwriting activities in New York. But the underwriters' alleged wrongdoing involves the due diligence process, not the technical aspects of the underwriting process. And the due diligence process was performed, at least in part, in Nevada.

For these three reasons, this case should be transferred to the District of Nevada.

## ARGUMENT

The Court enjoys ample discretion regarding whether to transfer this action pursuant to section 1404(a). *Frene N.V. v. Kmart Corp.*, No. 96 Civ. 9585, 1998 WL 427688, at *2 (S.D.N.Y. July 29, 1998) ("[i]t is settled law that the decision to transfer an action lies within the sound discretion of the district court") (quotation marks omitted); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 399-400 (S.D.N.Y. 1998) ("a district court has discretion to transfer an action to where the trial would best be expedient and just").

In exercising its discretion, the Court must weigh various factors, and the parties all agree on what those factors are. Here, the factors weigh in favor of transferring this case to the District of Nevada.

### I.   THE DISTRICT OF NEVADA SHOULD MANAGE BOTH ACTIONS.

In evaluating a motion to transfer, interests of efficiency and justice favor having multiple related cases assigned to a single court. This factor "may be determinative in a particular case." *See Tucker Anthony, Inc. v. Bankers Trust Co.*, No. 93 Civ. 0257 (SWK), 1994 WL 9683, at *8 (S.D.N.Y. Jan. 10, 1994) (case transferred to district where related litigation was pending).

"There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), *cert. denied*, 393 U.S. 977, (1968); *Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006). A plaintiff must show "compelling circumstances" in order to avoid transfer to a court with a related case. *See Unico Indus. Corp. v. S.S. Andros City*, 323 F. Supp. 896, 897 (S.D.N.Y. 1971) ("[i]n the absence of compelling circumstances to the contrary, an action should be transferred to the district where related actions have been brought").

This case and the derivative case now pending in Nevada arise out of the same facts. Both cases allege that Global Cash Access's "cost of revenues, and in particular its commissions, were understated" because its "internal controls were materially deficient such that commissions could not be accurately tracked." Nevada Compl. ¶¶ 2, 69.[1] The alleged misstatements pleaded in both cases focus on the same alleged inaccuracies in Global Cash Access's accounting for commissions. *See, e.g.*, Lowinger Compl. ¶ 29; City of Richmond Compl. ¶¶ 7-8 & 11. Both cases attack the accuracy of Global Cash Access's press release on November 14, 2007, its December 7, 2007 conference call, and its January 30, 2008 quarterly report.[2] And both cases base their conclusions on the results of an internal investigation performed by Global Cash Access's audit committee and announced in November 2007.[3]

---

[1] "Nevada Compl. ¶ __" refers to paragraphs in the Verified Consolidated Shareholder Derivative Complaint, filed on May 5, 2008 in the District of Nevada, and attached as Exhibit A to the Declaration of Darryl P. Rains in Support of Defendants' Motion to Transfer, filed with this Court on June 6, 2008.

[2] *See* City of Richmond Compl. ¶¶ 43, 45, 48 & 49; Nevada Compl. ¶¶ 5, 64-65, 67.

[3] *Compare* City of Richmond Compl. ¶ 7 ("[i]n December 2007, the Company . . . announced that the investigation involved issues pertaining to the calculation of commissions")

(Footnote continues on next page.)

The following table compares the allegations in this case and in the derivative action pending in Nevada and demonstrates that the factual allegations are the same:

| Subject | Nevada Complaint | City of Richmond Complaint |
|---|---|---|
| Alleged underpayment of commissions | "GCA underpaid commissions to its various customers." ¶ 4. | "GCAH had improperly computed the amount of commissions it was required to pay many of its customers . . . ." ¶ 11. |
| Alleged inadequacy of internal controls regarding commissions | "GCA's internal controls were materially deficient such that commissions could not be accurately tracked." ¶ 2. | "[T]he Company's internal controls were deficient . . . causing it to be unable or unwilling to accurately calculate the amount of commissions . . . ." ¶ 11. |
| Alleged misstatements in financial reports because of an understatement of commissions | "Defendants Relevant Period statements failed to disclose and misrepresented . . . [that] GCA's cost of revenues, and in particular its commissions, were understated . . . and as a result of the foregoing, GCA's reported earnings for the first three quarters of fiscal 2007 were inaccurate." ¶ 69. | *E.g.* "[T]he 1st Quarter 2007 Report was materially false and misleading because, among other things, (a) GCAH had improperly computed the amount of the commissions that it was required to pay many of its customers . . . ." ¶ 67; *see also* ¶¶ 57, 64 & 70. |
| Challenge to the May 10, 2007 Form 10-Q | The Form 10-Q "failed to disclose and misrepresented . . . [that] GCA's cost of revenues . . . were understated . . . and as a result of the foregoing, GCA's reported earnings for the first three quarters of fiscal 2007 were inaccurate." ¶¶ 59, 69. | The Form 10-Q "materially misstated Company's financial results by understating costs of revenues and operating expenses while at the same time overstating gross profit margins and net income." ¶ 65. |

---

(Footnote continued from previous page.)

*with* Nevada Compl. ¶ 65 ("On December 7, 2007, . . . defendant Betts disclosed that . . . GCA's internal investigation . . . discovered that commissions payable to twenty of Global Cash Access's customers were mis-calculated.").

| Subject | Nevada Complaint | City of Richmond Complaint |
|---|---|---|
| Challenge to the August 14, 2007 Form 10-Q | The Form 10-Q "failed to disclose and misrepresented . . . [that] GCA's cost of revenues . . . were understated . . . and as a result of the foregoing, GCA's reported earnings for the first three quarters of fiscal 2007 were inaccurate." ¶¶ 61, 69. | The Form 10-Q "materially misstated Company's financial results by understating costs of revenues and operating expenses while at the same time overstating gross profit margins and net income." ¶ 68. |
| Allegation of stock sales by former officers | Defendants "knew that the misstatements would create an inflated stock price for GCA stock. The Insider Selling Defendants took advantage of this undisclosed information to sell their personally held stock." ¶ 73. <br> Sales by Sanford <br> "Sanford – 9/7/2007 – 1,646 [shares] – $18,171.84 [proceeds]. <br> Sanford – 11/1/2007 – 118,969 [shares] – $1,189,690.00 [proceeds]." ¶ 73. <br> Sales by Hagerty <br> "Hagerty – 7/27/2007 – 59,052 [shares] – $839,719.44 [proceeds]." ¶ 73. | Defendants "stood to gain significant additional profits by maintaining a high stock price throughout the Class Period so that additional insider sales could be accomplished and many more millions of dollars gained." ¶ 89. <br> Sales by Sanford <br> "Sanford traded in suspiciously-high amounts, disposing of over 177,000 shares on September 7, 2007, and another 119,000 shares on November 1, 2007 . . . ." ¶ 93. <br><br> Sales by Hagerty <br> "On July 27, 2007, Hagerty sold a total of 59,052 shares of GCAH stock realizing proceeds of more than $840,000." ¶ 95. |
| Reliance on Global Cash Access's internal investigation | "On November 14, 2007, the Individual Defendants announced that GCA was delaying the filing of . . . Form 10-Q pending a purported internal investigation . . . ." ¶ 64. | "On November 14, 2007, . . . GCAH announced that it would be delaying the filing of . . . Form 10-Q . . . pending an internal investigation under the direction of an independent committee of the Board . . . ." ¶ 110. *See also* ¶ 43. |
| Reliance on alleged corrective disclosures on November 14, 2007, December 7, 2007, and January 30, 2008 | "The Truth Is Finally Revealed" ¶¶ 64-68 (heading). *See also* ¶¶ 5-6. | "[C]orrective disclosures . . . on November 14, 2007 caused Plaintiff to suffer massive losses . . . ." ¶ 108; *see also* ¶ 44 (regarding December 7 conference call); ¶¶ 47-48 (regarding January 30, 2008 Form 10-Q). |

5

Despite these undisputed similarities, plaintiff argues that this action and the derivative action in Nevada differ because this action names two underwriters as defendants and relies on statements related to public offerings. Opp. at 19.[4] This mischaracterizes the central thrust of plaintiff's complaint. This action, like the derivative action in Nevada, challenges Global Cash Access's statements in SEC filings based on Global Cash Access's prior accounting for commissions and its internal controls related to commissions. The word "commissions" is mentioned in thirty-six paragraphs of the City of Richmond complaint. Plaintiff has not alleged any improprieties, errors, or misstatements in connection with the public offering apart from statements regarding commissions.

In contrast, the allegations that mention the underwriters are sparse and boilerplate. They identify the underwriter defendants (City of Richmond Compl. ¶¶ 26-27) and their role in the offerings (*id.* ¶¶ 26-27 & 84-86), provide a general statement of the underwriters' legal duties and obligations (*id.*), and identify the compensation that they received (*id.* ¶ 97). To the extent that plaintiff makes any allegation regarding the two underwriters, the allegations do not complain about what the underwriters did in New York but what they did not do in Nevada, *i.e.*, whether they did or did not conduct sufficient due diligence into the accounting for commissions. *Id.* ¶¶ 84-86. It is not possible to read plaintiff's complaint without recognizing that the two underwriters are small players in the factual play that plaintiff seeks to write.

Thus, both the derivative action in Nevada and the present action involve the same facts. Certain legal elements differ, but the factual nucleus is the same. Certain parties differ, but the

---

[4] In addition to two lead underwriters, plaintiff refers to six underwriters who served as non-lead underwriters for Global Cash Access's two offerings. Opp. at 3, 8, and 10. However, it has not named these underwriters as defendants, nor has it made a single allegation regarding these underwriters in its complaint. Nonetheless, even if these additional underwriters are named as defendants in any amended complaint, it does not tilt the balance toward retaining this action in New York.

focal point for all parties is the same question: whether, when, how, and in what ways were commissions misstated?

Because they involve the same factual issues, the two cases should be tried in the same court. For example, in *Goggins v. Alliance Capital Management, L.P.*, 279 F. Supp. 2d 228 (S.D.N.Y. 2003), the court transferred a securities fraud class action to Florida, where related derivative litigation was pending, because both actions focused on the same misrepresentations in public filings, relied on the same alleged statements made by the fund's portfolio manager, and alleged the same unheeded "red flags." Even though some factors favored leaving the case in New York, the court found that the benefits of having related class and derivative cases in one court outweighed all of the other factors. *Id.* at 233-35.

Similarly, in *APA Excelsior III L.P. v. Premiere Techs, Inc.*, 49 F. Supp. 2d 664 (S.D.N.Y. 1999), the court transferred a securities fraud and breach of contract suit to a district in which a related class action (alleging similar misrepresentations and similar allegations about ineffective internal controls) was pending. The court rejected arguments nearly identical to those made by plaintiff here. *Id.* at 669-70 & n.7. Transfer was proper because any legal differences in the claims "do not alter the facts that both actions hinge on the same core of operative facts." *Id.* at 670-71. *See also Tucker Anthony*, 1994 WL 9683 (action transferred to other court where related litigation was pending which arose from the same set of transactions and involved the same witnesses and parties).

The justifications for transfer here are even more compelling because, by the time this case progresses, the Nevada court will already be more familiar with the events regarding commissions that underlie the dispute. *Fuji*, 415 F. Supp. 2d at 376.

These factors also show how this case differs from the circumstances present in *Funke v. Life Financial Corp.*, No. 99 Civ. 11877, 2003 WL 194204 (S.D.N.Y. Jan. 28, 2003). Like this

7

case, *Funke* involved a claim regarding underwriters and a public offering. But, unlike this case, there was no related action pending elsewhere and thus no action with which to coordinate proceedings. This distinction is critical and should determine the outcome in the present circumstances. *See Williams v. Nat'l Hous. Exch. Inc.*, 898 F. Supp. 157, 160 & n.2 (S.D.N.Y. 1995) (differentiating between a transfer analysis in a case where a related action is pending in the proposed transferee district and one where no related action is pending because of the "potent considerations of duplicative litigation and inconsistent rulings that color the former situation").

Moreover, in the two years prior to the motion to transfer, the court in *Funke* had become familiar with the facts and claims in the case, had already ruled on defendants' motion to dismiss, and had engaged actively in the case's pretrial management. *Funke,* 2003 WL 194204, at *1. The court emphasized these factors in rejecting transfer: "To transfer this case now would be to waste the considerable judicial resources expended thus far." *Id.* at *4.

## II. THE CONVENIENCE OF THE WITNESSES AND PARTIES FAVORS TRANSFER.

### A. The Most Important Witnesses – Those Involved In The Calculation Of Commissions – Are In Nevada.

The witnesses with the most knowledge about Global Cash Access's commissions calculations — the employees who actually made the calculations — are all located in Nevada. This fact argues powerfully in favor of a transfer to Nevada.

While plaintiff complains that defendants did not disclose the names of these witnesses, defendants did describe them — current and former Global Cash Access employees in its accounting, audit, compliance, customer relations, finance, and sales departments, employees involved in the due diligence process and in drafting the registration statements, and current and former members of management — and established that they reside in Nevada. This approach is sufficient to provide an evidentiary basis for transfer. "Even though defendants have not

provided a list that identifies potential witnesses expected to be called to testify, the events giving rise to this action demonstrate that the vast majority of material witnesses are in Northern California and would therefore find it more convenient to testify in California than in New York." *MBCP Peerlogic, LLC v. Critical Path*, No. 02 Civ. 3310 (SWK), 2002 WL 31729626, at *4 (S.D.N.Y. Dec. 5, 2002)

In any event, defendants have provided a supplemental declaration in support of their reply brief which identifies seven individuals from the company's current and former management team whom defendants would expect to call at trial, along with the numerous other current and former employees of Global Cash Access and Deloitte who live in Las Vegas. Suppl. Rains Decl. ¶ 9.

Finally, plaintiff argues that witnesses from Skadden Arps and KPMG, who live in New York, will participate in pretrial proceedings or the trial. Opp. Br. at n.6. But the individuals from Skadden Arps and KMPG who conducted the internal investigation live in the San Francisco Bay Area. Suppl. Rains Decl. ¶ 8. Skadden's and KPMG's participation thus weighs in favor of transfer.

### B. More Defendants And The Primary Representatives Of Defendants Are Located In Nevada.

Plaintiff argues that the case should remain in New York because the two underwriter defendants are headquartered in New York. Both underwriter defendants, who are in the best position to determine what is convenient for them, do not oppose this motion. *See Williams*, 898 F. Supp. at 161 (by consenting to litigate in a particular forum, the "parties remove from the section 1404(a) balancing exercise their inconvenience that would otherwise" weigh for or against the transfer). Further, it is undisputed that these large institutions are accustomed to doing business throughout the country.

Plaintiff also argues that Deloitte's large office in New York justifies keeping the case in this district. But the relevant witnesses from Deloitte — the people who participated in audits of Global Cash Access — are in Las Vegas. Rains Decl. ¶ 19; Suppl. Rains Decl. ¶ 7. This factor is far more significant than the location of a building that is labeled as an entity's headquarters. *See Nematron*, 30 F. Supp. 2d at 404 (ordering transfer because the relevant KPMG witnesses resided in the transferee district, not the partnership's New York office). Furthermore, Deloitte supports defendants' motion to transfer. Suppl. Rains Decl. ¶ 7.

Moreover, the complaint in this action adds two additional defendants to the case who reside in Las Vegas. Defendant Harry C. Hagerty III, Global Cash Access's Chief Financial Officer until July 2007, lives in Las Vegas. Global Cash Access, Inc. operates from Las Vegas. With these new defendants, Kirk Sanford, Harry Hagerty III, Global Cash Access Holdings, Global Cash Access, Inc., the entire management team of both Global Cash Access entities, and the partner in charge of Deloitte's audit all reside in Las Vegas. Two additional defendants, Summit Partners and M&C International, are located in California. Two others reside in Florida. Plaintiff is in Richmond, Virginia, and thus plaintiff must travel in any event. *In re Connetics Sec. Litig.*, No. 06 Civ. 11496 (SWK), 2007 WL 1522614, at *4 (S.D.N.Y. May 23, 2007). The fact that Nevada is the home of the greatest number of parties favors transfer.

Finally, plaintiff's argument that transfer might be inconvenient for its lawyers, who live in New York, is essentially irrelevant. *See, e.g., In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 396 n.5 (S.D.N.Y. 2006) ("convenience of parties' counsel is not an appropriate consideration in the transfer analysis"). Moreover, Grant & Eisenhofer is currently serving as lead counsel in at least one securities class action in the District of Nevada. *See In re Shuffle Master, Inc. Sec. Litig.*, No. 07-cv-00715-KJD-RJJ (D. Nev. filed June 1, 2007).

### III. THE LOCUS OF OPERATIVE FACTS FAVORS TRANSFER.

Because the calculation of commissions is the focal point of this action, Nevada is the location where the operative facts occurred and where all events related to commissions took place. As plaintiff acknowledges, the preparation of Global Cash Access's financial statements occurred in Nevada, along with the calculation of commissions owed to Global Cash Access's customers. Opp. Br. at 13. These undisputed facts by themselves justify transfer, as this Court has recognized in a similar context. *In re Connetics*, 2007 WL 1522614, at *6 (transferring a case regarding a New York bond offering because plaintiff's claims concerning the offering arose out of alleged misrepresentations in a registration statement that arose from conduct in the transferee district).

While some of the mechanical aspects of completing a public offering occurred in New York, most of the work related to Global Cash Access's public offerings took place in Las Vegas. The registration statements and prospectuses issued from Global Cash Access's Las Vegas headquarters and were prepared in Las Vegas and at the California office of its lawyers. Rains Decl. ¶ 17; Suppl. Rains Decl. ¶¶ 11-12. Even part of the underwriters' due diligence efforts was conducted in Las Vegas. Suppl. Rains Decl. ¶ 11. While some documents related to the offerings may be found in New York, this fact is insignificant in comparison to the scope and nature of the events related to commissions accounting that occurred in Las Vegas.[5]

---

[5] Plaintiff also asserts that the location of documents is largely insignificant because they can be transmitted outside the forum with little burden. Certainly, it will be easier to move whatever documents exist in New York to Las Vegas than it will be to move all the accounting-related documents regarding commissions and the offering from Las Vegas to New York. *See Elec. Workers Pension Fund v. Nuvelo, Inc.*, No. 07 CIV 975, 2007 WL 2068107, at *4 (S.D.N.Y. July 20, 2007) (although the documents relating to the underwriters were to be produced from or near New York, these documents were far less relevant than the documents from the company's headquarters regarding issuance of the allegedly false and misleading statements).

### IV. PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE DEFERENCE.

Plaintiff's opposition does nothing to show why its choice of forum is entitled to deference when it is not a resident of New York and is seeking to represent a nationwide class. *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). This factor is even less significant since it was not lead plaintiff City of Richmond, but Lowinger, who filed the first action and chose this forum. And the primary reason for the choice appears to be based on Lowinger's counsel having its office in New York – a factor that is irrelevant in transfer analysis.

### CONCLUSION

The factors used to determine whether transfer is appropriate under 28 U.S.C. § 1404(a) overwhelmingly favor transfer of venue to the District of Nevada. Defendants' motion should, therefore, be granted.

Dated: New York, New York
       July 30, 2008                    MORRISON & FOERSTER LLP


                                        By: /s/ Joel C. Haims
                                            Joel C. Haims (jhaims@mofo.com)
                                        1290 Avenue of the Americas
                                        New York, NY  10104
                                        Telephone:  (212) 468-8238
                                        Facsimile:  (212) 468-7900

                                        MORRISON & FOERSTER LLP
                                        Darryl P. Rains*
                                        Erik J. Olson*
                                        755 Page Mill Road
                                        Palo Alto, CA  94304-1018
                                        Telephone:  (650) 813-5600
                                        Facsimile:  (650) 494-0792
                                        *Not admitted to practice before this Court

                                        *Attorneys for Defendants Global Cash Access Holdings, Inc., Global Cash Access, Inc., Kirk Sanford, Karim Maskatiya, Robert Cucinotta, Harry C. Hagerty III, M&C International, and Summit Partners, L.P.*