UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X
In Re GLOBAL CASH ACCESS HOLDINGS, x      08 Cv. 3516 (SWK)
INC. SECURITIES LITIGATION     x
                                x      **OPINION AND ORDER**
----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On June 10, 2008, lead plaintiff City of Richmond Retirement System ("Richmond") filed a class action complaint alleging that Global Cash Access Holdings, Inc. ("GCAH," or the "Company") and its operating subsidiary (collectively, the "GCAH Defendants"), several of its officers and directors, its co-lead underwriters (the "Lead Underwriter Defendants"), two institutional shareholders (the "Shareholder Defendants"), and its independent auditor committed various violations of the federal securities laws. Several defendants have petitioned the Court to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the Court grants the motion and transfers this case to the District of Nevada.

I.    **BACKGROUND**

    **A. Procedural History**

On April 11 and June 10, 2008, two class action complaints (the "Lowinger Complaint" and the "Richmond Complaint," respectively) were filed in this District, collectively alleging that the above-mentioned defendants committed securities-law violations. In an Opinion and Order dated June 26, 2008, the

Court consolidated those two actions under the above caption, appointed Richmond as lead plaintiff, and named Grant & Eisenhofer P.A. as lead counsel. <u>Lowinger v. Global Cash Access Holdings, Inc.</u>, 08 Cv. 3516 (SWK), 2008 WL 2566558, at *4 (S.D.N.Y. June 26, 2008).

Richmond is a government-sponsored retirement plan that resides in Virginia and manages the pension assets for the city's public workers. (Richmond Compl. ¶ 17.) On June 10, 2008, Richmond filed its complaint[1] on behalf of a putative nationwide class of individuals who purchased GCAH securities between September 22, 2005 and November 14, 2007 (the "Class Period"). (Richmond Compl. 1.)

---

[1]   The instant motion to transfer was brought in response to the Lowinger Complaint, on the same day that Richmond filed its complaint. In light of the substantial overlap between the Lowinger and Richmond Complaints, the Court did not require the Movant Defendants to file a new motion to transfer following the appointment of Richmond as lead plaintiff. The Court's June 26, 2008 Scheduling Order, however, required Richmond to respond to the motion to transfer before its consolidated class action complaint was due. 08 Cv. 3516 (SWK), Dkt. No. 26. The parties therefore refer to the allegations contained in the Richmond Complaint in their opposition and reply briefs.
    On August 18, 2008, Richmond filed its consolidated class action complaint (the "Consolidated Complaint"), <u>see</u> 08 Cv. 3516 (SWK), Dkt. No. 34, and the parties submitted letters setting forth their respective analyses of how the evolution of Richmond's allegations should--or should not--affect the Court's venue analysis. Therefore, in the instant opinion, the Court relies primarily on the Richmond Complaint, but also considers the Consolidated Complaint's additions, deletions, and alterations.

The Richmond Complaint identifies various institutional and individual defendants. GCAH is a corporation and holding company incorporated in Delaware, whose principal asset is the 100% stock of its operating subsidiary, Global Cash Access, Inc. ("GCA") (Richmond Compl. ¶ 18.) Through its subsidiary, GCAH provides cash access and customer-relationship marketing technologies to the gambling industry. (Richmond Compl. ¶ 2.) At all relevant times, the GCAH Defendants maintained their principal executive offices in Las Vegas, Nevada. (Richmond Compl. ¶ 18.)

Individual defendant Kirk Sanford ("Sanford") is the former President and Chief Executive Officer of GCAH, and was a member of the Company's Board of Directors. (Richmond Compl. ¶ 19.) Sanford currently resides in Nevada. (Rains Decl. ¶ 20.) Harry C. Hagerty, III ("Hagerty") was the Company's Executive Vice President and Chief Financial Officer (Richmond Compl. ¶ 20) and currently resides in Nevada (Defs.' Reply, Supplemental Declaration of Darryl P. Rains ("Rains Supp. Decl.") ¶ 5). Karim Maskatiya ("Maskatiya") co-founded GCA, is the former Co-Chairman of the Board of Directors (Richmond Compl. ¶ 21), and currently resides in Florida (Rains Decl. ¶ 20). Robert Cucinotta co-founded GCA, served on the Board of Directors (Richmond Compl. ¶ 22), and currently resides in Florida (Rains Decl. ¶ 20).

The Lead Underwriter Defendants are Goldman Sachs & Co. and J.P. Morgan Securities, Inc., both of which maintain their principle places of business in New York (Richmond Compl. ¶¶ 26-27). The Shareholder Defendants are holding company M&C International ("M&C") and investment fund Summit Partners, L.P. ("Summit"), both of which are located in California. (Richmond Compl. ¶¶ 24-25). D&T served as GCAH's independent auditor from its offices in Las Vegas. (Defs.' Mot., Declaration of Darryl P. Rains ("Rains Decl.") ¶ 19.)

The Consolidated Complaint retains the defendants named in the Richmond Complaint and adds several others. Walter G. Kortschak ("Kortschak"), Charles J. Fitzgerald ("Fitzgerald"), E. Miles Kilburn ("Kilburn"), and William H. Harris ("Harris") served on the Company's Board of Directors, and on the Board's Audit Committee, during the Class Period. (Consolidated Compl. ¶¶ 25-26, 28-29.) Kortschak and Fitzgerald are also partners in defendant Summit. (Consolidated Compl. ¶¶ 25-26.) There is no competent evidence on the record concerning the residence of these individuals.[2]

---

[2] Richmond makes no representation regarding the residences of these defendants, and the Court will not consider the residence assertions contained in the Movant Defendants' August 22, 2008 letter (the "Movant Defendants' August 22 Letter"), as they are not supported by factual affidavit. See, e.g., Cohn v. Metro. Life Ins. Co., 07 Cv. 928 (HB), 2007 WL 1573874, at *4 (S.D.N.Y. May 31, 2007); GPA Inc. v. Liggett Grp., Inc., 94 Cv. 5735 (AGS), 1994 WL 537017, at *2 (S.D.N.Y. Oct. 4, 1994).

The Consolidated Complaint also names additional entity defendants. JPMorgan Chase & Co. ("JPMorgan Chase")[3]; Cowen & Co., LLC ("Cowen"); Deutsche Bank Securities, Inc. ("DBSI"); Banc of America Securities LLC ("BAS"); Citigroup Global Markets LLC ("CGM"); and Wachovia Capital Markets, LLC ("WCM") (collectively, the "Non-Lead Underwriter Defendants") served as non-lead underwriters for the Company's September 22, 2005 initial public offering ("IPO"), and for a Secondary Offering, which took place in May 2006. (Consolidated Compl. ¶¶ 35-40.) Cowen, DBSI, BAS, and CGM maintain their principal executive offices in New York (Consolidated Compl. ¶¶ 36-39), while WCM maintains its principal executive offices in North Carolina (Consolidated Compl. ¶ 40). The Court lacks competent evidence regarding JPMorgan Chase's residence.[4]

The Richmond Complaint alleges multiple securities-laws violations stemming from the registration statement issued in connection with the IPO, a second registration statement, which was created for the Secondary Offering, and various other publications and filings allegedly made or controlled by the

---

[3] JPMorgan Chase is the successor to Bear Sterns & Co. Inc., the actual non-lead underwriter in question. (Consolidated Compl. ¶ 35.)

[4] The Court does not consider the residence assertions in the Movant Defendants' August 22 Letter or Richmond's August 19, 2008 letter. See supra note 2. In addition, Richmond's statement that JPMorgan Chase's predecessor maintained "an office" in New York (Richmond's Opp'n, Declaration of Megan D. McIntyre ¶ 2) is insufficient to establish residence.

defendants. According to Richmond, the defendants made false and misleading statements and omissions regarding GCAH's payment of and accounting for commissions payable to its customers, causing the Company to misstate its costs of revenues, gross profit margins, and income, and causing artificial inflation of GCAH's stock during the Class Period. (Richmond Compl. ¶ 1.) The Richmond Complaint seeks relief for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5 promulgated thereunder, Section 20(a) of the 1934 Act, and Sections 11, 12(A)(2), and 15 of the Securities Act of 1933 (collectively, the "1933 Act Claims"). (Richmond Compl. ¶¶ 118-155.)

The allegations of the Consolidated Complaint derive solely from the registration statements associated with the IPO and Secondary Offering. (Consolidated Compl. ¶ 1.) Richmond has retained only the 1933 Act Claims (Consolidated Compl. ¶¶ 113-18) and "specifically disclaims any allegations of fraud" (Consolidated Compl. ¶ 2.)

After the filing of the first complaint in this consolidated litigation, the GCAH Defendants, Sanford, Hagerty, Maskatiya, Cucinotta, and Shareholder Defendants (collectively, the "Movant Defendants") filed the instant motion to transfer

venue to the District of Nevada.[5] D&T supports the motion (Rains Supp. Decl. ¶ 7), and neither of the Underwriter Defendants opposes it (Rains Decl. ¶ 23). The Court has received no submissions regarding the transfer motion from the defendants named for the first time in the Consolidated Complaint.

## II. DISCUSSION

### A. Legal Standard

A district court may transfer a civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining the propriety of a motion to transfer venue, a district court must conduct a two-part inquiry. First, the district court must decide whether the action "might have been brought" in the transferee district. Id.; Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). Second, the district court must analyze the extent to which the interest of justice and the convenience of the litigation warrant a transfer of venue. Fuji Photo Film, 415 F. Supp. 2d at 373; In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (citation omitted).

---

[5] The Lowinger Complaint does not name Global Cash Access, Inc. or Hagerty as defendants. Following their addition to the case in the wake of the Richmond Complaint, they have evidently joined the motion and are represented by counsel for the other Movant Defendants.

This second, case-specific analysis generally involves the consideration of several factors, including: (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. Fuji Photo Film, 415 F. Supp. 2d at 373 (citation omitted); In re Nematron, 30 F. Supp. 2d at 400 (citations omitted). A district court may grant a motion for a transfer of venue only if the moving party has made a "clear and convincing" showing that transfer is appropriate in light of these and any other relevant factors. In re Nematron, 30 F. Supp. 2d at 400 (citations and internal quotation marks omitted).

Here, the parties do not dispute that Richmond's case "might have been brought" in the District of Nevada. Therefore, the motion to transfer venue turns on the nine factors listed above. As the following analysis demonstrates, the Movant Defendants have shown that the applicable factors favor transfer of this action to the District of Nevada.

**B. Application of the Nine Venue Factors to the Instant Case**

**1. The Convenience of Witnesses**

The "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) (citation and internal quotation marks omitted). In evaluating this factor, the Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citation omitted).

Here, although the Movant Defendants argue that the convenience of both party and non-party witnesses favors transfer (see Defs.' Mot. 10-11), their moving brief fails to identify potential witnesses and to describe their intended testimony. See Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (stating that moving party "must support the transfer application with an affidavit containing detailed factual statements . . ., including the potential principal witnesses expected to be called and a general statement of the substance of their testimony") (citation and internal quotation marks omitted). Nor will the Court consider the witness list and descriptions set forth for the first time in the defendants' reply brief. See, e.g.,

<u>Hummingbird USA, Inc. v. Tex. Guaranteed Student Loan Corp.</u>, 06
Cv. 7672 (LTS) (GWG), 2007 WL 163111, at *2 (S.D.N.Y. Jan. 24,
2007) (refusing to consider witness identifications in
declaration submitted with reply brief). Nonetheless, in cases
where, as here, the plaintiff alleges that certain documents
contained false or misleading statements, the key witnesses are
frequently "officers and employees of [the issuer] who
participated in drafting or distributing [those] statements." <u>In</u>
<u>re Stillwater Mining Co. Sec. Litig.</u>, 02 Cv. 2806 (DC), 2003 WL
21087953, at *4 (S.D.N.Y. May 12, 2003); <u>accord</u> <u>In re Nematron</u>,
30 F. Supp. 2d at 402 ("It is well known that trials in
securities class actions focus almost entirely on the
defendants' conduct.") Thus, the events giving rise to this case
support the defendants' general assertion that a substantial
number of potential material witnesses reside in Nevada. (<u>See</u>
Rains Decl. ¶ 18 (stating that majority of current and former
GCAH employees involved with the IPO reside in Nevada).) <u>MBCP</u>
<u>Peerlogic, LLC v. Critical Path</u>, 02 Cv. 3310 (SWK), 2002 WL
31729626, at *4 (S.D.N.Y. Dec. 5, 2002) (citing <u>Citibank v.</u>
<u>Transcontinental Prods. & Servs., Inc.</u>, 98 Cv. 6889 (RCC), 1999
WL 595658, at *2 (S.D.N.Y. Aug. 6, 1999); <u>Chrome Hearts, Inc. v.</u>
<u>Montana St. Wear, Inc.</u>, 95 Cv. 10736 (RPP), 1996 WL 306368, at
*2 (S.D.N.Y. June 7, 1996)).[6]

---

[6] Although courts have made similar findings in securities-fraud

In opposition, Richmond posits that many potential witnesses, including employees of the law and accounting firms that participated in GCAH's internal investigation, reside in New York. (McIntyre Decl. ¶ 6.) In actuality, however, these individuals reside in California. (Rains Supp. Decl. ¶ 8.)[7] As they reside in neither the transferor nor the transferee district, their convenience does not factor into the Court's analysis. See Price v. Stossel, 07 Cv. 11364 (SWK), 2008 WL 2434137, at *3 n.5 (S.D.N.Y. June 4, 2008) (citations omitted). The only potential New York witnesses evidenced in the record are the as-yet-unnamed current and former employees[8] of the Lead and Non-Lead Underwriter Defendants. (McIntyre Decl. ¶¶ 4-5.)

---

cases, see, e.g., Peerlogic, 2002 WL 31729626, at *4; In re Nematron, 30 F. Supp. 2d at 402, such conclusions were not dependent on the existence of scienter allegations, and indeed the same reasoning is applicable in non-securities contexts, as well, see, e.g., Citibank, 1999 WL 595658, at *2; Chrome Hearts, 1996 WL 306368, at *2. Thus, the Court's conclusion is unaffected by Richmond's deletion of its securities-fraud allegations from the Consolidated Complaint.

[7] Unlike the other factual statements set forth for the first time in the defendants' reply, the sworn statement regarding the residence of the internal investigation participants is merely a response to the supposition set forth in Richmond's opposition. The Court therefore considers it in adjudicating this motion.

[8] As discussed in Part II.B.2, infra, the Underwriter Defendants have consented to litigation in either district, thereby removing their convenience from the Court's purview. The Court, however, must still consider the convenience of non-party witnesses, which includes at a minimum the Lead and Non-Lead Underwriter Defendants' current and former employees, see, e.g., In re Connetics Sec. Litig., 06 Cv. 11496 (SWK), 2007 WL 1522614, at *7 (indicating that former employees of defendant are non-party witnesses); (cf. Defs.' Mot. 5 (listing current employees of defendant as non-party witnesses)).

Therefore, the events giving rise to this case suggest that, on balance, the convenience of the witnesses weighs in favor of transfer.

**2. The Convenience of the Parties**

In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence . . . ." <u>U.S. Fidelity & Guar. Co. v. Republic Drug Co.</u>, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). Here, the GCAH Defendants and individual defendant Sanford reside in Nevada and have asserted that they would be inconvenienced by the prosecution of this lawsuit in the Southern District of New York.[9] (Defs.' Mot. 11; Rains Decl. ¶¶ 7, 20). Four of the six Non-Lead Underwriter Defendants, on the other hand, reside in New York, which, at a minimum, makes this District a presumptively convenient forum for them.

Movant defendants Maskatiya and Cucinotta, who reside in Florida, the Shareholder Defendants, which reside in California, and WCM, which resides in North Carolina, will be forced to travel regardless of the choice of forum. Therefore their convenience is not considered in this analysis. <u>See</u> <u>Price</u>, 2008 WL 2434137, at *3 n.5 (citations omitted). Furthermore, the

---

[9] Defendants GCA and Hagerty reside in Nevada as well (Rains Supp. Decl. ¶¶ 5-6) but make no assertion of inconvenience. The Court thus presumes only that Nevada is a convenient forum for him. <u>Cf.</u> <u>Price</u>, 2008 WL 2434137, at *4.

Court does not consider the convenience of D&T, who supports the
instant motion (Rains Supp. Decl. ¶ 7), or of the Underwriter
Defendants, who do not oppose the motion (Rains Decl. ¶ 23).
Williams, 898 F. Supp. at 161. In addition, the convenience of
defendants Kortschak, Fitzgerald, Kilburn, Harris, and JPMorgan
Chase does not affect this venue factor, as the parties have
failed to establish their residences by competent evidence. See
supra notes 2, 4, and accompanying text.

Richmond is a Virginia resident and thus cannot claim that
this District is the more convenient forum for it. See In re
Hanger Orthopedic Grp., Inc. Sec. Litig., 418 F. Supp. 2d 164,
169 (E.D.N.Y. 2006). Furthermore, Richmond purports to bring
this action on behalf of a nationwide class of purchasers of
GCAH securities, many of whom will not be New York residents.
Because many class members will be inconvenienced regardless of
whether the instant suit proceeds in this District or in the
District of Nevada, Richmond's residence provides no support for
keeping this suit in New York. See In re Collins & Aikman Corp.
Sec. Litig., 438 F. Supp. 2d 392, 396 (S.D.N.Y. 2006); In re
Hanger, 418 F. Supp. 2d at 169; In re Nematron, 30 F. Supp. 2d
at 403.

Ultimately, some of the defendants have strong ties to the
District of Nevada, some reside in New York, and the remaining
parties have ties to neither district or are not considered in

this analysis. Under these circumstances, this factor weighs neither for nor against a change in venue.

### 3. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, see In re Hanger, 418 F. Supp. 2d at 170, it nonetheless retains some relevance to the venue inquiry, In re Collins & Aikman, 438 F. Supp. 2d at 396-97; Ravenswood Inv. Co. v. Bishop Capital Corp., 04 Cv. 9266 (KMK), 2005 WL 236440, at *6 (S.D.N.Y. Feb. 1, 2005); In re Stillwater Mining Co. Sec. Litig., 02 Cv. 2806 (DC), 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003). Many of the documents pertaining to the defendants' allegedly false or misleading statements were prepared in the District of Nevada and are maintained therein. (Rains Decl. ¶¶ 10-19.) Nevertheless, Richmond argues that other pertinent documents are located in this District. (McIntyre Decl. ¶¶ 5-6.)

Because the majority of the documents pertinent to the allegations of the Richmond Complaint are located in the District of Nevada, that forum is at least a marginally better forum in which to proceed. See In re Collins & Aikman, 438 F. Supp. 2d at 396-97 (district where "financial statements, press releases, earnings statements, and SEC filings" were prepared and located was "at least marginally more convenient"); In re

<u>Nematron</u>, 30 F. Supp. 2d at 404 (finding that transfer was appropriate in order to, <u>inter alia</u>, avoid "unnecessary" cost of copying and shipping relevant documents).

### 4. The Locus of Operative Facts

Courts in this District have held that misrepresentations or omissions occur "where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." <u>In re Collins & Aikman</u>, 438 F. Supp. 2d at 397 (quoting <u>Adair v. Microfield Graphics, Inc.</u>, 00 Cv. 629 (MBM), 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000). The allegedly misleading registration statements at issue in this case emanated from GCAH's Las Vegas Headquarters. (Rains Decl. ¶ 17.) D&T audited the financial statements contained in GCAH's prospectus from its Las Vegas office. (Rains Decl. ¶ 19.) GCAH concedes that its registration statement and prospectus were prepared in part in California (Rains Decl. ¶ 17.) Nonetheless, the defendants have demonstrated that significant portions of the operative facts occurred in the District of Nevada.

In contrast, Richmond argues that the locus of operative facts is split between this District and the District of Nevada because certain aspects of the IPO and Secondary Offering occurred here. (Richmond's Opp'n 13.) Although these events undoubtedly occurred in New York, they are insufficient to pull the "center of gravity" of this litigation away from Nevada,

where the critical alleged misstatements and omissions occurred. See In re Nematron, 30 F. Supp. 2d at 404 (finding that sale and purchase of stock in New York did not pull locus away from district from which financial statements emanated and in which due diligence and independent audits occurred); In re Stillwater, 2003 WL 21087953, at *4 (holding that New York was not locus of operative facts despite trading of shares on New York Stock Exchange); Morgan Guar. Trust Co. v. Tisdale, 95 Cv. 8023 (BSJ), 1996 WL 544240, at *6 (S.D.N.Y. Sept. 25, 1996) (concluding that locus of operative facts is district in which offering materials originated, not district where sale of bank notes occurred). Therefore, the location of the operative facts weighs strongly in favor of a transfer of venue.

**5. The Availability of Process to Compel Attendance of Unwilling Witnesses**

Under Federal Rule of Civil Procedure 45(b)(2), a district court may compel the appearance only of those witnesses who reside in the district in which the court sits, or within 100 miles of the place of trial. Here, the allegations giving rise to this case demonstrate that there will be many potential witnesses who reside in the District of Nevada, outside the reach of this Court's subpoena powers. See supra Part II.B.1. Some of these potential witnesses, however, are parties to the instant litigation, whose attendance may be compelled by the

district court wherever this suit is heard. See In re Geopharma Sec. Litig., 04 Cv. 9463 (SAS), 2005 WL 1123883, at *3 (S.D.N.Y. May 11, 2005) (citing 15 U.S.C. § 78aa). Other likely potential witnesses are employees of GCAH, whose testimony may be compelled without the need for a subpoena. Fuji Photo Film Co., 415 F. Supp. 2d at 375 (citing Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)). Nonetheless, there are other witnesses, such as the former employees of GCAH, who are not subject to either this Court's subpoena powers or the compulsive influence of an employer.

Richmond argues against transfer on the grounds that the current and former employees of the Lead and Non-Lead Underwriter Defendants reside in New York, outside the subpoena powers of the District of Nevada. Although these defendants' current employees can be compelled to testify without the use of a subpoena, see Fuji Photo Film Co., 415 F. Supp. 2d at 375, there is no process of compulsion available for their former employees.

Thus, the parties face potential subpoena difficulties whether the Court grants or denies the instant motion.[10] As there are no allegations that any particular witnesses are unwilling

---

[10] In addition to the New York and Nevada witnesses identified in this section, the Court notes that the legal and accounting employees who assisted in GCAH's internal investigation reside in San Francisco, California, outside the reach of the subpoena powers of both Courts. (Rains Supp. Decl. ¶ 7.)

to testify should this matter proceed to trial, this factor is neutral in the Court's analysis.

**6. The Relative Means of the Parties**

The Movant Defendants do not argue that this factor favors transfer, and Richmond concedes that it has the means to litigate in either this District or the District of Nevada (Richmond's Opp'n 14 n.10). This factor is therefore neutral in the Court's analysis.

**7. The Forum's Familiarity with the Governing Law**

Federal courts throughout the nation are equally capable of applying federal securities laws. In re Collins & Aikman, 438 F. Supp. 2d at 398. Accordingly, this factor is also neutral.

**8. The Weight Accorded the Plaintiff's Choice of Forum**

"A plaintiff's choice of forum is generally entitled to considerable weight . . . ." Berman, 30 F. Supp. 2d at 659 (citations omitted). That weight is reduced, however, in a stockholder class action, where members of the class are dispersed throughout the nation. Berman, 30 F. Supp. 2d at 659 (citing Shulof v. Westinghouse Elec. Corp., 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975)); see also In re Warrick, 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("[T]he plaintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action.").

Here, Richmond is not a resident of this forum. In addition, Richmond purports to bring this securities class action on behalf of a widely dispersed, nationwide class of individuals. Therefore, although Richmond had a legitimate reason for filing suit in this District instead of its home district of Virginia, see Funke v. Life Fin. Corp., 99 Cv. 11877 (CBM), 2003 WL 194204, at *3 (S.D.N.Y. Jan. 28, 2003), Richmond's choice of forum is entitled to substantially less deference in the class-action context. See, e.g., In re Collins & Aikman, 438 F. Supp. 2d at 398; In re Hanger, 418 F. Supp. 2d at 170.

### 9. Trial Efficiency and the Interest of Justice

In considering trial efficiency, a district court may pay some mind to relative levels of docket congestion in the prospective transferor and transferee districts. See In re Hanger, 418 F. Supp. 2d at 171; see also In re Nematron, 30 F. Supp. 2d at 407 (noting that though docket conditions in the transferor and transferee districts "are relevant," they are "insufficient on [their] own to support a transfer motion") (citations and internal quotation marks omitted). See In re Hanger, 418 F. Supp. 2d at 171 (finding 2.7 month difference in relative median disposition times to weigh marginally in favor of transfer). Here, the defendants assert that the District of Nevada is a less congested forum (Defs.' Mot. 8), because, on

average, judges in that District preside over fewer cases, and a lower percentage of civil cases are more than three years old (Raines Decl. ¶ 26). On the other hand, the median time from filing to disposition for civil cases in each district is nearly identical, and the time period from filing to trial in civil cases is shorter in this District. (McIntyre Decl. Ex. E.) Moreover, this Court's docket is comparatively light, and it observes no problems that would prevent diligent and efficient consideration of the instant case. Cf. Funke, 2003 WL 194204, at *4. The Court therefore concludes that docket congestion is not a factor weighing in favor of transfer.

Factors other than docket congestion, however, are at play in the instant case. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, [duplicative] litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." Savin v. CSX Corp., 657 F. Supp. 1210, 1214 (S.D.N.Y. 1988) (quoting Wyndham Assocs. v. Bintliff, A.G., 398 F.2d 614, 619 (2d Cir. 1968)). Here, a consolidated derivative action (the "Nevada Litigation") that predates the instant litigation is currently pending in the District of Nevada. See Stueve v. Sanford, 07 Cv. 1659 (JCM) (PAL) (D. Nev.); Mollenkopf v. Kortschak, 08 Cv. 171 (JCM) (PAL) (D. Nev.). The eight

individual defendants in this action are also named in the Nevada Litigation. (Consolidated Compl. ¶¶ 21-26; 28-29; 07 Cv. 1659 (JCM) (PAL), Dkt. No. 41, ¶¶ 15-26.)

Richmond claims that this case is not sufficiently related to the Nevada Litigation to warrant a transfer of venue because, inter alia, the Consolidated Complaint does not challenge the accuracy of certain press releases and filings at issue in the Nevada Litigation and does not allege insider trading. (Richmond's August 19, 2008 Letter 1.) Nonetheless, the cases in both districts arise from the GCAH Defendants' alleged understatement of revenue costs and deficient internal controls. The similarity in the cases' "core of operative facts" weighs at least somewhat in favor of transfer. See, e.g., Foothill Capital Corp. v. Kidan, 03 Cv. 3976 (RMB), (S.D.N.Y. Mar. 8, 2004); APA Excelsior III L.P. v. Premiere Techs., Inc. 49 F. Supp. 2d 664, 668-71 (S.D.N.Y. 1999) (transferring case to venue adjudicating related case, despite differences in causes of action); Nat'l Union Fire Ins. Co. v. Turtur, 743 F. Supp. 260, 264 (S.D.N.Y. 1990), particularly since this case is in its infancy, see, e.g., Jenkins v. Beltrani, 00 Cv. 4696 (NGG), 2000 U.S. Dist. LEXIS 20977, at *12 (E.D.N.Y. Dec. 27, 2000).

Even if this case does not proceed before the judge presiding over the Nevada Litigation,[11] transfer to the District of Nevada would, at a minimum, consolidate any discovery in the two actions to the same geographical area, thereby saving time and expense for the overlapping parties, witnesses, and their attorneys. See, e.g., In re Collins & Aikman, 438 F. Supp. 2d at 398-99 (finding that ninth venue factor favored transfer of securities litigation when "facts and witnesses overlap[ped]" with bankruptcy proceeding and state-law fraud action already pending in transferee district); Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 234-35 (S.D.N.Y. 2003); Bombardier Capital, Inc. v. Solomon, 00 Cv. 848 (RMB), 2000 WL 1721138, at *6 (S.D.N.Y. Nov. 17, 2000) (noting that transfer of federal litigation to "same geographical area" as pending state case would facilitate trial efficiency).[12] The interest in trial

---

[11] The parties to the Nevada Litigation have stipulated that further consolidation of related cases is a possibility. See 07 Cv. 1659 (JCM) (PAL) (D. Nev.), Dkt. No. 26, at 4. The determination of relatedness, however, is the province of the District of Nevada.

[12] Richmond argues that this factor does not weigh in favor of transfer because the future of the derivative action "is in serious doubt" (Richmond's Opp'n 16), in light of the defendants' pending motion to dismiss in that action (McIntyre Decl. Ex. F). The Court declines to speculate about the outcome of that motion. Even if the Court were to assume that dismissal was likely, the imminent dismissal of the derivative action would merely neutralize the ninth factor of the venue analysis and would not affect the Court's ultimate conclusion that transfer is warranted in the instant case.

efficiency therefore makes the transferee district a somewhat more convenient forum.

In summary, the majority of the venue factors point in the direction of transfer, while the rest are neutral. The locus of operative facts, in particular, weighs strongly in favor of the transferee district. Under these circumstances, the Court concludes that the defendants have shown by clear and convincing evidence that transfer is in the "best interests of the litigation." See Berman, 30 F. Supp. 2d at 656 (quoting Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 216 (S.D.N.Y. 1995)).

## III. CONCLUSION

This Court's analysis of the venue factors as they relate to the instant action demonstrates that the District of Nevada is a superior forum for this litigation. Therefore, the defendants' motion to transfer venue is hereby granted. The Clerk is directed to transfer this case, including all actions consolidated thereunder, to the District of Nevada.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           September ____, 2008

efficiency therefore makes the transferee district a somewhat more convenient forum.

In summary, the majority of the venue factors point in the direction of transfer, while the rest are neutral. The locus of operative facts, in particular, weighs strongly in favor of the transferee district. Under these circumstances, the Court concludes that the defendants have shown by clear and convincing evidence that transfer is in the "best interests of the litigation." See Berman, 30 F. Supp. 2d at 656 (quoting Linzer v. EMI Blackwood Music, Inc., 904 F. Supp. 207, 216 (S.D.N.Y. 1995)).

## III. CONCLUSION

This Court's analysis of the venue factors as they relate to the instant action demonstrates that the District of Nevada is a superior forum for this litigation. Therefore, the defendants' motion to transfer venue is hereby granted. The Clerk is directed to transfer this case, including all actions consolidated thereunder, to the District of Nevada.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          September  /8, 2008

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   7/18/08
```

23